STATE OF DELAWARE V. JOSEPH JOHN HUPF, II.

(*December* 9, 1953.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*H. Albert Young*, Attorney-General, and *Edmund N. Carpenter, II*, Deputy Attorney-General, for the State.

*Newton White* and *Carroll F. Poole* for defendant.

Supreme Court of the State of Delaware, No. 26, 1953.

Superior Court for New Castle County, No. 21, November, 1952.

SOUTHERLAND, C. J.:

The Superior Court of New Castle County has certified to us for answer, pursuant to Art. IV, § 11(9) of the Constitution, questions of law growing out of a prosecution for manslaughter.

The essential question is whether the crime of involuntary manslaughter is established by proof of death resulting proximately from the commission of an unlawful act, or whether there must also be proof of conduct evidencing reckless disregard for the lives or safety of others.

The facts are these:

Defendant was involved in an automobile accident when the car that he was driving collided with another car. As a result of the collision a passenger in his car was killed.

Defendant was indicted for manslaughter. The indictment was in six counts. Four of these counts charged violations of four sections of the Delaware Motor Vehicle Laws embodying

rules of the road. The other two counts charged "common law manslaughter" and failure to keep a proper lookout. The case was tried by the court without a jury. The State established, and the defendant admitted, the violation of the four sections of the motor vehicle laws as charged in the indictment. The court found, however, that the State had failed to establish a reckless disregard for the life and safety of others so as to make the defendant guilty of "common law manslaughter" i. e., criminal negligence.

Upon considering the verdict to be rendered, the court found that a conflict existed in the rulings of our trial courts defining the elements of the crime of involuntary manslaughter. To resolve this conflict it has certified to us for answer the following questions:

"A. If death results from the Violation of a motor vehicle law of the State of Delaware providing for rules of the road, is a finding of guilty of manslaughter justified without any showing of a reckless disregard for the life and safety of others sufficient to establish common law manslaughter?

"B. If death is a proximate result of the violation of Section 100(a) of the Motor Vehicle Laws of the State of Delaware, is defendant guilty of manslaughter under Paragraph 5161 *Revised Code of Delaware* (1935) despite no showing of a reckless disregard for the life and safety of others so as to establish common law manslaughter?

"C. If death is a proximate result of the violation of Section 100(b) of the Motor Vehicle Laws of the State of Delaware, is defendant guilty of manslaughter under Paragraph 5161 *Revised Code of Delaware* (1935) despite no showing of a reckless disregard for the life and safety of others so as to establish common law manslaughter?

"D. If death is a proximate result of the violation of Section 85(c) of the Motor Vehicle Laws of the State of Delaware, is defendant guilty of manslaughter under Paragraph 5161 *Re-*

*vised Code of Delaware* (1935) despite no showing of a reckless disregard for the life and safety of others so as to establish common law manslaughter?

"E. If death is a proximate result of the violation of Section 85(a) of the Motor Vehicle Laws of the State of Delaware, is defendant guilty of manslaughter under Paragraph 5161 *Revised Code of Delaware* (1935) despite no showing of a reckless disregard for the life and safety of others so as to establish common law manslaughter?"

To answer these questions we must determine the elements of the species of the crime of manslaughter that involves an unintentional killing and hence is called "involuntary manslaughter." Since our statute, 11 *Del. C.* § 575, contains no definition, we must look to common-law principles. The classic definition is that of Blackstone, "the unlawful killing of another * * * involuntarily, but in the commission of some unlawful act." *Com.* Vol. 4, p. 191. It is clear from the illustrations in Blackstone's text that by the phrase "unlawful act" the learned author meant either an act unlawful in itself or a lawful act done "in an unlawful manner, and without due caution and circumspection." *Id.* p. 192.

The textbooks have followed generally this division of involuntary manslaughter into two classes, one characterized by the commission of an unlawful act, and the other by the doing of a lawful act in a negligent (or grossly negligent) manner.

"Involuntary manslaughter, according to the old writers, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to a felony, or from a lawful act negligently performed." 1 *Wharton, Homicide,* § 107.

"Definition.—Involuntary manslaughter is a homicide committed unintentionally, but without excuse, and not under such circumstances as to raise the implication of malice. It may arise—

"1. From malfeasance, or the doing of a criminal act not amounting to a felony, nor naturally tending to cause death or great bodily harm.

"2. From misfeasance, or the doing of a lawful act with gross negligence.

"3. From nonfeasance, or the omission to perform a legal duty under circumstances showing gross negligence." *Clark and Marshall, Crimes,* § 262.

"Cases of manslaughter have been divided into three classes: (1) Where there was an intent to take life and the killing would be murder but for mitigating circumstances. (2) Where death results from unintentionally doing an unlawful act. (3) Where it results from the negligent doing or omission of an act which, though not in itself wrongful, was attended by circumstances which endangered life; 1 *McLain Cr. L.* § 335." 2 *Bouvier's Law Dict.,* p. 2084.

As we shall see, the Delaware cases have accepted this classification, although the two concepts—disobedience to law and negligence—have sometimes been confused.

In the instant case counts 2, 3, 4 and 5 of the indictment charge offenses falling within the first class; counts 1 and 6 charge offenses falling within the second class. The questions certified by the lower court concern the four counts based on violations of law. These questions will be considered together since they present a single point for determination: Does a homicide resulting proximately from violation of a penal law, not amounting to a felony, constitute involuntary manslaughter without proof of rash or reckless conduct amounting to gross negligence?

If the definitions above quoted correctly state the law the answer to this question must be in the affirmative. And a review of the Delaware cases leaves no doubt that our courts, in dealing with the first class of cases involving violations of law, have followed the common law rule.

In *State v. Brown*, 1 *Houst. Cr. Cas., Del.* 539, the Court said:

"* * * It is also manslaughter, where one in doing an unlawful act, not felonious nor tending to great bodily harm, undesignedly kills another; or in doing a lawful act without caution, or requisite skill." 1 *Houst. Cr. Cas., Del.*, at page 553.

The court also said:

"But though the act be in itself lawful, yet if done in an improper manner, whether it be by excess, or culpable ignorance, or want of due caution, and death ensues, it will be manslaughter. So it will be manslaughter if a person is killed by ignorance, gross negligence or culpable inattention, on the part of one assuming to be his physician or surgeon; or, by the negligent driving of a cart or carriage, or the like, ill management of a boat, or by gross carelessness in casting down rubbish from a scaffold, or the like." 1 *Houst. Cr. Cas., Del.*, at page 554.

The distinction between the two classes has been almost uniformly recognized. *State v. Morahan*, 7 *Penn., Del.*, 494, 77 *A.* 488; *State v. Dean*, 2 *W. W. Harr* (32 *Del.*) 290, 122 *A.* 448; *State v. Phillips*, 7 *W. W. Harr.* (37 *Del.*) 544, 552, 187 *A.* 108; *State v. Bell*, 8 *W. W. Harr.* (38 *Del.*) 328, 192 *A.* 553; *State v. Elliott*, 1 *Terry* (40 *Del.*) 250, 8 *A.* 2d 873; *State v. Donovan*, 1 *Terry* (40 *Del.*) 257, 266, 8 *A.* 2d 876.

But, as above stated, the charges to juries have sometimes confused the elements that distinguish the two classes. Thus in *State v. Long*, 7 *Boyce* (30 *Del.*) 397, 108 *A.* 36, 38, the court defined involuntary manslaughter as arising "from an unlawful act, or from a lawful act done without proper caution or skill", but then proceeded to charge the jury as follows:

"* * * we say to you that any one who, while driving his automobile at a higher rate of speed than the law allows, kills another by striking him with (or throwing him from) his car, is *prima facie* guilty of negligence; and such act will make the driver criminally liable and guilty of manslaughter, if it is

clearly shown by the evidence that such unlawful speed was the cause of the death."

The court further charged:

"And we further instruct you that if the death resulted from the unlawful rate of speed, or from the careless and reckless driving of the car, the fact that the killing was unintentional on the defendant's part does not excuse him. It makes no difference how unintentional it may have been, if the death was caused by the defendant's criminal and gross negligence."

The court also charged:

"* * * If you believe from the testimony that at the time of the collision of the two automobiles the defendant was driving his car in violation of the statute that governs the speed of automobiles, and that such act was the cause of the death of Margaret Dyer, your verdict should be guilty. And even if you do not believe that the defendant, at the time of the collision, was running his car in violation of said speed statute, but are satisfied that the child's death was caused by gross negligence on the part of the defendant, your verdict should be guilty."

Thus the first quoted portion of the charge appears to assume that negligence is the essential element of the crime, the statutory violation being evidence thereof; the later parts of the charge, however, preserve the distinction between an act done in violation of law on the one hand and gross negligence on the other.

Substantially the same charge was delivered in the later cases of *State v. McIvor*, 1 *W. W. Harr.* (31 *Del.*) 123, 111 *A.* 616, and *State v. Disalvo*, 2 *W. W. Harr.* (32 *Del.*) 232, 121 *A.* 661.

All of the three cases last discussed involved motor vehicle collisions resulting in death. In automobile accidents the element of a violation of statutory regulations and the element of negligence often concur. This fact seems to have frequently led

to the blurring of the distinction between the two classes of involuntary manslaughter. See the comments in the article *"Unintentional Homicide in the Commission of an Unlawful Act"*, 87 *Univ. Pa. Law Rev.* § 811, at pp. 818-819.

However, in the still later case of *State v. Dean, supra,* the charge on *"prima facie* negligence" implied from a violation of law is not found; and the court limited its charge to an instruction that if the defendant violated the statute he was guilty of an unlawful act, and if death resulted therefrom it would be manslaughter. This, we think, was the correct charge. A statutory violation is not necessarily accompanied by negligence.

This brings us to the defendant's argument. Conceding that all of the foregoing cases have followed the common-law rule that homicide in the commission of an unlawful act is manslaughter, he makes two contentions. First, he asserts that the charge in the *Long* case is illogical and confusing, because it first holds that the commission of the unlawful act is only *prima facie* proof of negligence, and then proceeds to hold that the unlawful act is in itself sufficient to constitute the crime. Second, he says that the correct rule is that gross or criminal negligence, i. e., conduct showing a conscious or reckless disregard for the lives or safety of others, is a necessary element of all cases of involuntary manslaughter, whether or not a violation of law be proved. In effect, defendant challenges the correctness of the division of involuntary manslaughter into the two classes above discussed.

We agree with defendant's criticism of the charge in the *Long* case. It is illogical to regard the unlawful act as proof of negligence, as though negligence were the essential element to be proved, and then to hold that violation of the statute is the essential element. Moreover, we think the instruction misleading in another respect. It appears to embody the idea that any negligence that might constitute a civil wrong is sufficient to constitute the crime of manslaughter if death results from such negligence. This, we think, is not the law. In *Clark and Marshall on Crimes,* § 262 (h), the authors say:

"*Act Constituting a Mere Civil Wrong.*—The *dictum* in many of the cases is broad enough to make it manslaughter to unintentionally kill another while engaged in committing a mere civil wrong or tort, but this is not the law. To have this effect the act must, at least, be a misdemeanor."

It is true that many, perhaps most, of the charges to juries found in our cases begin with an apparent approval of this dictum. The *Brown* case, *supra,* fails to preserve the distinction between ordinary negligence and gross negligence, and in some of the earlier textbooks the distinction is not preserved. *Cf. Russell on Crimes,* Vol. 1, pp. 849-856.

In *State v. Woods,* 7 *Penn., Del.,* 499, 77 *A.* 490, 491, the court went so far as to charge, in effect, that an unlawful act was committed if the defendant was "doing that which he had no right to do"—a characterization that would apparently embrace any civil wrong.

But it seems clear from a review of both English and American authorities that negligence, to constitute the basis for the crime of manslaughter, must be something more than ordinary negligence. The distinction between ordinary negligence and gross negligence has been criticized (see 38 *Am. Jur., Negligence,* § 43), but it is too firmly grounded in the law to be disregarded. Indeed, the concept of gross negligence as "wilful or wanton disregard of the rights of others" has received legislative approval in our so-called automobile guest statute. 21 *Del. C.* § 6101. The later Delaware cases of involuntary manslaughter not only recognize degrees of negligence but define gross negligence as "such degree of carelessness as was likely to cause death", *State v. Benton,* 8 *W. W. Harr.* (38 *Del.*) 1, 187 *A.* 609; or as negligence "of such degree as to evidence a reckless disregard for the life or safety of others", *State v. Arnold,* 3 *Terry* (42 *Del.*) 47, 27 *A.* 2d 81, 83. The use of these definitions, it may be observed, would seem more helpful to a jury than the vague phrases "gross or culpable negligence". See the comments of Chief Justice Layton in the *Benton* case, 8 *W. W. Harr.* (38 *Del.*) at page 14, 187 *A.* at page 615.

The development of the distinction between ordinary and gross negligence in the English law of manslaughter is reviewed in *Commonwealth v. Gill,* 120 *Pa. Super.* 22, 182 *A.* 103. And see the following English cases: *Rex v. Green,* 7 *Car. & P.* 156, 173 *Eng. Rep.* 69; *Reg. v. Spencer,* 10 *Cox C. C.* 525; *Reg. v. Franklin,* 15 *Cox C. C.* 163; in which the distinction is clearly recognized.

We think, therefore, that the language of many of our cases defining manslaughter as a homicide resulting from the commission of a lawful act in a negligent or careless manner is, at best, lacking in precision. It may have been intended to convey the idea of that degree of negligence which the law requires, since the later portions of the charges usually refer to "gross or culpable negligence"; but it would seem desirable, in defining the crime to a jury, to state specifically that the second type of involuntary manslaughter results from the commission of a lawful act in a grossly negligent manner, that is, in a manner evidencing a reckless disregard for the lives or safety of others.

But, because the charge in the *Long* case may be criticized in the foregoing respects, it does not follow that defendant's second contention is acceptable, that is, the contention that reckless conduct involving disregard for the lives or safety of others is a necessary element of the crime when it results from the commission of an act forbidden by law, that is, a misdemeanor. In support of this contention defendant cites to us the charge to the jury in *State v. Schmid, Superior Court, No.* 40, *Jan. T.* 1952; unreported, involving a prosecution for manslaughter by motor vehicle. A reading of the charge shows that it does announce the rule for which defendant contends. The evidence in the case tended to show that the defendant, in violation of law, was driving his automobile with faulty brakes. After quoting the applicable statute, the court said:

"If you find that the defendant, while operating his motor vehicle at the time and place in question, was operating it with faulty brakes, then the defendant has violated the statute above

referred to, and such violation of said statute is *prima facie* evidence of negligence; but in order to find the defendant guilty in this case, you must be satisfied that he was not only guilty of negligence, but guilty of gross and culpable negligence.

\* \* \* \* \* \*

"With regard to the charge of manslaughter by operating an automobile, as in this case, the fact that it is shown that the automobile was operated in violation of a statute or ordinance regulating speed or prescribing caution to be observed, is not conclusive guilt, but is a circumstance bearing on the question whether the operation of the automobile was in fact criminally negligent. Thus, the fact that there may be evidence to the effect that the accused drove an automobile at a speed greater than allowed by law does not necessarily establish the degree of negligence required for conviction in a case of this nature. Culpable or gross negligence must be proved as well as the facts that the death of the deceased was the direct result of the negligent act."

We think the quoted instruction erroneous. It is a departure from the law announced in the long line of cases beginning with *State v. Brown, supra,* in 1878. The correct charge is that given in *State v. Dean, supra.*

Defendant argues that the common-law rule is too harsh. When applied to the operation of the motor vehicle it results, he says, in stamping as a felon any automobile operator who may, without conscious wrongdoing, have violated one of the many statutory regulations governing the use of the automobile, if he is involved in an accident resulting in death. Thus, defendant says that the driver of an automobile taking a seriously injured person to the hospital is, under the common-law rule, equally guilty of manslaughter if he violates the speed limit and a child is killed by darting out in front of him, as is the driver who consciously attempts to pass another car upon a twisting hill and as a result is involved in a fatal collision.

The answer to this argument is that if, in such a case, the excessive speed was the proximate cause of the accident, the

driver is indeed guilty, but the circumstances would go in miti-
gation of punishment; and that if the excessive speed was not
the proximate cause of death (as might be inferred from the use
of the phrase "darting out"), the driver is not guilty. The doc-
trine of proximate cause is an important limitation on the com-
mon-law rule that homicide occurring in the commission of an
unlawful act is manslaughter. The mere violation of the statute
is not enough; the violation must be the proximate cause of the
death, and that causal connection must affirmatively appear. The
unlawful act must be "something more than a factor which might
be denominated more properly as an attendant condition than
a cause of the death." So said the Superior Court of Pennsyl-
vania in *Commonwealth v. Williams,* 133 *Pa. Super.* 104, 1 *A.* 2d
812, 814, in reversing a conviction for manslaughter by motor
vehicle where the unlawful act charged was a failure to renew
an operator's license.

We agree that by no means all the American authorities are
in accord with the common-law rule. Some courts have imported
into the law of involuntary manslaughter a distinction, in respect
of unlawful acts, between one *malum prohibitum* and one *mal-
um in se.* Such a distinction has never been recognized in our
cases, and we see no reason to adopt it. To do so would be to
introduce confusion and uncertainty into a rule of law now
plain and understandable. There are no doubt many regulations
applicable to motor vehicles the violation of which does not
evince moral turpitude; but it does not seem too much to ask
that the automobile driver be held to strict accountability for
violation of regulations prescribed by the law-making power in
the interest of public order and safety, if that violation is the
cause of the death of another. A careful application by the courts
of the doctrine of proximate cause, and the common sense of
the jury, should prevent any undue hardship in the enforcement
of the common-law rule.

█ We hold that death resulting proximately from the
commission of an unlawful act not a felony or tending to great
bodily harm constitutes manslaughter, and that it is unnecessary

for the State to prove conscious or reckless disregard of the lives or safety of others.

It follows that the questions certified to us must be answered in the affirmative.