STATE OF DELAWARE V. STANFORD JUSTICE, JR.

438

(*November* 4, 1955.)

LAYTON, J., sitting.

*Herbert L. Cobin*, Chief Deputy Attorney-General, for the State.

*Ernest V. Keith* for the Defendant.

Superior Court for New Castle County, No. 263, Criminal Action, 1955.

LAYTON, J.:

Defendant was indicted for manslaughter by automobile as the result of a collision between his truck and an automobile on March 28, 1955, as the result of which a passenger in the automobile was killed. Trial by jury was waived.

I find the following facts:

(1) On the evening of March 28, 1955, between 8:00 and 8:30, defendant, Stanford Justice, was driving a tractor with an open trailer loaded with lumber north on U. S. 13, a dual highway.

(2) About 3½ miles north of Smyrna, he drove over a dirt crossover to a small restaurant on the west side of the dual highway to seek information about the way to Rome, N. Y.

(3) His truck was 44 ft. long overall and well lighted both front and sides.

(4) As he crossed the southbound lane of Route 13, he swung his truck in a sharp circle to the right so that it ended up pointing east at the dual highway and sat just south of the restaurant.

(5) To the south of him, probably 30 ft., was the crossover he had just used. To the north, about 100 ft., was another crossover. About 400 ft. north of this latter crossover there was a fairly sharp curve in the dual highway. The curve was in a westerly direction.

(6) The night was dark but clear and dry.

(7) As defendant left the restaurant, he glanced north and, seeing nothing coming, elected to swing north on the southbound lane, "bucking" traffic in order to gain the crossover to his north.

(8) Defendant knew of the curve to his north and must have realized that his view in that direction was sharply limited.

(9) As his tractor proceeded across the southbound lane heading northeast just prior to swinging north on the inner lane of the southbound lane, he saw a car driven by Mrs. Janucik coming south around the curve on the outside lane of the southbound lane. The car was traveling moderately and he concluded it would pass to the left and rear of his tractor.

(10) Though realizing that cars might be behind this car traveling at a speed limit of 55 M.P.H. and using the inside lane (his lane) in order to pass other cars, he did not try to drive his whole "rig" off the cement and onto the grass plot in order to gain the northerly crossover, but kept his truck on the inside lane of the southbound lane.

(11) As he was approaching the northerly crossover preparatory to swinging right over onto the northbound lane, a car driven by Willard Patterson came around the curve southbound about 200 ft. behind the Janucik car and swung out into the inner or eastbound lane of the southbound lane of traffic in order to pass the Janucik car.

(12) Realizing that the driver of this second car might not see him, defendant desperately attempted to swing his whole truck off onto the grass. By this time, defendant's truck was headed almost north, blinking its lights as a warning but he was unable to get the rear portion of his truck completely off the inside lane of the southbound lane with the result that Patterson's car hit the rear wheels of his truck, bounced over against the Janucik car to its right and turned completely around.

(13) At the time of the collision, the left front driving wheels of defendant's truck were 2 ft. on the concrete portion of the inner lane of the southbound lane and the rear tandem wheels were about 5 ft. out on the said lane.

(14) The driver of the Patterson car did not see the defendant's truck until he was practically on top of it.

(15) As a result of this collision, Mrs. Bratton, a passenger in the Patterson car, was killed.

In *State v. Hupf,* 9 *Terry* 254, 101 *A.* 2d 355, 360, the Supreme Court of this State held that the operator of an automobile who violated a statute governing the operation of motor vehicles upon the highways of this State as the proximate cause of which violation a death ensued, was guilty of involuntary manslaughter. By way of explanation of its conclusion, the Court took occasion to state:

"* * * There are no doubt many regulations applicable to motor vehicles the violation of which does not evince moral turpitude; but it does not seem too much to ask that the automobile driver be held to strict accountability for violation of regulations prescribed by the law-making power in the interest of public order and safety, if that violation is the cause of the death of another. A careful application by the courts of the doctrine of proximate cause, and the common sense of the jury, should prevent any undue hardship in the enforcement of the commonlaw rule."

Inasmuch, then, as this defendant admittedly violated 21 *Del. C.* § 4145, by operating his tractor on the wrong side of a dual highway, the question remains whether his action in this respect was either the, or one of the, proximate causes of the death.[1] I can come to no other conclusion unless the actions of

---

[1]The *Hupf* case contains no discussion of the various ramifications which may arise from the rule there laid down. For instance, it did not decide whether a defendant driver whose statutory violation was but one of the proximate causes of death was guilty of manslaughter. I assume without deciding that the rationale of the *Hupf* case includes the situation where statutory violations by two drivers, one a defendant and the other not a defendant, each constitute a proximate cause of death.

Patterson, the driver of the machine in which the deceased was riding, could be taken as having intervened so completely into the case as to have constituted the sole proximate cause. But I am not prepared to say that such was the case. Indeed, I am not able to find unequivocally that Patterson was guilty of any positive violation of statute or of a commonlaw duty such as to amount to a wilful or wanton disregard of the safety of others. There was testimony that he was going at 60 M.P.H., but not only do I regard this testimony as somewhat unreliable but, also, Patterson and another passenger in his car stoutly deny it. The driver of the truck who estimated Patterson was going 60 M.P.H. based his testimony on the speed with which Patterson passed his truck and caught up to the Janucik car ahead. But the truck driver was going not over 48 M.P.H. so that Patterson could have been going 7 M.P.H. faster and still have been within the speed limit. Moreover, Mrs. Janucik, having seen defendant's truck crossing her lane and turning north into the inner lane, took her foot off the accelerator which would have allowed Patterson, who did not see the danger and, thus, did not slow down, to come up on her machine even faster.

Patterson's failure to see[2] defendant's truck until almost the moment of impact is curious but I am unable to ascribe to it that degree of negligence amounting to wilful and wanton disregard of the safety of others. In the first place, his forward vision may have been momentarily blocked by the Janucik car ahead of him. Moreover, by the time he pulled out to pass, the truck was no longer broadside[3] across the road but was proceeding at an angle from N.E. to N.[4], so that neither its headlights nor sidelights were pointing directly at him. Finally, even if he did see the lights, he could well have imagined that they were

[2]In Delaware, the duty to keep a proper lookout is not imposed by statute, but, rather, is a common law obligation. The *Hupf* case held that a violation of a common law duty in order to constitute manslaughter must be so drastic as to amount to a wilful or wanton disregard of the rights of others.

[3]When Mrs. Janucik first saw the truck, it was almost broadside to her with its left side lights facing her.

[4]Assuming the highway ran due north and south.

those of a northbound truck on the other side of the dual high-way, for the last thing he could have anticipated was a huge tractor-trailer "bucking" traffic in his lane.

Altogether, then, I fail to find in Patterson's actions anything constituting a contributing, let alone sole, proximate cause of this unfortunate happening.

Finally, defendant strenuously argues that the northerly crossover, above referred to, was undoubtedly laid out in order to permit northbound traffic, upon leaving the coffee stand in question, to gain the easterly side, or northbound lane, of the dual highway. This may be conceded. However, whatever reasons may have motivated the Highway Department to construct a crossover which, in effect, amounts to a tacit invitation to northbound users of this coffee stand, including ponderous tractor-trailers, to "buck" traffic on the southbound lane are matters neither within my province nor do they constitute a defense. Rather it is a mitigating factor which will be taken into account upon the imposition of sentence.