ANN WEBSTER, Defendant Below, Appellant, v. STATE OF DELAWARE, Plaintiff Below Appellee.

(*September* 16, 1965)

WOLCOTT, Chief Justice, and CAREY and HERRMANN, JJ., sitting.

*Vincent A. Theisen* and *Victor F. Battaglia* of Theisen & Lank, for defendant below, appellant

*Ruth M. Ferrell,* Deputy Atty. Gen., for plaintiff below, appellee.

Supreme Court of the State of Delaware.

No. 12, 1964.

HERRMANN, Justice.

The jury found the defendant Webster guilty of involuntary manslaughter after trial on an indictment for murder in the second degree. Upon this appeal, the defendant asserts several grounds of reversible error in the trial.

I.

The defendant's version of the facts is as follows:

The defendant and her husband had been quarreling about his threat to leave her. On the occasion of an earlier separation, the defendant had been frightened by prowlers and she decided to purchase a gun for self-protection. On the morning of the fatal shooting, at the defendant's request, a friend purchases a nine-shot .22 caliber revolver for her, loaded it, and delivered it to her. That evening, alone in their bedroom, the defendant was again told by her husband that he intended to leave. The defendant went into another room and returned

with the loaded pistol in her hand. The husband, a semi-professional athlete, thereupon threw a heavy baseball trophy at the defendant, striking her in the head. The gun went off once and the husband was hit. A struggle ensued during which the gun went off eight more times, the husband being hit each time. The defendant was rendered unconscious during the struggle, sustaining several head and face injuries. When she regained consciousness, she fled the house to avoid further attack by her husband who sought to renew the struggle. The defendant ran to her mother's home and went promptly to the police station to report the matter, arriving about 8:45 P.M.

Because of her condition, the police immediately took the defendant to the hospital where she was given first aid treatment; and she was returned to the police station about 10:45 P.M. In the meanwhile, the police commenced investigation and found the husband dead, the body being in a chair in the kitchen of the house. The investigating officers returned to the police station at about 11:30 P.M. Interrogation of the defendant commenced at about 12:15 A.M. She was advised that she did not have to make a statement, that she had the right to consult counsel, and that anything she said could be used against her. During the interrogation she asked for and was given cigarettes, coffee, and aspirin. Her written statement was completed and signed at about 3:00 A.M., after eyeglasses were retrieved from her home by the police so that she could read the statement. Thereafter, the defendant was processed at the police station, including fingerprinting and photographing. At about 4:30 A.M., at her request, she returned to her home for a change of clothing prior to appearance before the Justice of the Peace, which occured at about 5:30 or 6:00 A.M. She was thereafter promptly delivered to the constable.

## II.

The defendant contends that her inculpatory statement was admitted in evidence in violation of Superior Court Criminal Rule 5(a),

*Del. C.*[1] The defendant relies upon Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942).

The question is not properly before us for review. Neither on the *vior dire* examination before the court nor in the presentation of the statement before the jury was the question of unlawful detention raised; and no objection to the admission of the statement was made at any stage of the trial on that ground. Voluntariness, in the ordinary sense, was the only issue raised at the trial in connection with the admissibility of the statement; and that issue went to the jury in the usual way and under usual instruction. Compare Wilson v. State, 10 Terry 37, 49 Del. 37, 109 A.2d 381, 387 (1954).

As a general rule, we will not consider on appeal questions not fairly presented below. Matters of public policy, however, are exceptions to the general rule. Rickards v. State, 6 Terry 573, 45 Del. 573, 77 A.2d 199 (1950). Under that exception, because of its importance to the proper administration of criminal justice, we proceed to consider the question raised.

In the recent case of Vohauer v. State, Del., 212 A.2d 886 (1965), we adopted the McNabb-Mallory rule,[2] excluding evidence obtained during an illegal detention, and applied it to a detention

------

[1] Superior Court Criminal Rule 5(a) provides:
"RULE 5. PROCEEDINGS BEFORE THE COMMITTING MAGISTRATE
"(a) Appearance. An officer making arrest with or without a warrant or any other authorized peace officer shall take the arrested person without unreasonable delay before either the nearest available Justice of the Peace of the county in which the offense is alleged to have been committed or before the court out of which the warrant issued, in accordance with the command of the warrant. When an arrest is made without a warrant, a complaint shall be made as soon as the accused is brought before a committing magistrate."

[2] Derived from McNabb v. United States, supra and Mallory v. United States, supra.

exceeding the 24 hour period specified by 11 *Del. C.* Sec. 1911.[3] We there held that, by virtue of the public policy announced in Sec. 1911, any detention exceeding 24 hours, without the required appearance before a Justice of the Peace, constitutes "unreasonalbe delay" and illegal detention as a matter of law, unless the reason therefor is one recognized by the Statute as a ground for permissible delay; and we held that any inculpatory statement or confession obtained during an unreasonable delay is inadmissible in evidence without regard for voluntariness. We there stated:

"* * * The exclusion in criminal trials of evidence obtained as a result of such violation of the law is the most practical and effective means at the disposal of our courts for the avoidance of similar violations in the future. We adopt such means to enforce the law, seeking to deter unlawful detentions just as we have sought to deter unlawful arrests. The law may not be enforced by disobedience of the law."

Thus, as a rule of evidence to enforce compliance with Rule 5 and Sec. 1911, we applied the McNabb-Mallory rule to the circumstances of the Vohauer case.

For the same basic reasons, we think that the exclusionary rule should be applicable to illegal detentions of less than 24 hours. Clearly, a delay may be "unreasonable", and in violation of the Rule and the Statute, though less than 24 hours in duration. But no clear-cut standards of reasonableness may be prescribed. Each case must be considered by the trial judge on its own facts; and the number of hours of detention prior to apprarance before a Justice of the Peace is to be considered by the trial judge, together with all of the other

----

[3] 11 *Del. C.* Sec. 1911 provides:

"Sec. 1911. Hearing without delay; permissible delay

"If not otherwise released; every person arrested shall be brought before a magistrate without unreasonalbe delay, and in any event he shall, if possible, be so brought within 24 hours of arrest, Sundays and holidays excluded, unless a Resident Judge of the county where he is detained or of the county where the crime was commited for good cause shown orders that he be held for a further period of not exceeding 48 hours."

circumstances of the case, in determining whether the delay was unreasonable, and in violation of Rule 5 and Sec. 1911, so as to bar admission of a confession or statement obtained during such delay.

We emphasize that, unlike the issue of voluntariness which is based upon constitutional grounds, the reasonableness of a delay is a question of evidence to be determined by the trial judge alone; it does not become a jury question. Compare Wilson v. State, supra; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). As we have indicated in Vorhauer, and as appears in McNabb and Mallory, the exclusionary rule with which we deal here is a rule of evidence, adopted by the courts as an instrument to implement the proper administration of criminal justice; and it does not stand upon constitutional grounds. See also Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948). As a rule of evidence, it is to be applied by the trial court, without jury participation, in the same manner as other rules of evidence. Compare Lasby v. State, Del., 185 A.2d 271, 274 (1962). We find no merit in the defendant's attempt to read constitutional guarantees into the McNabb-Mallory rule.

In the instant case, the defendant was held as an accused for approximately four hours before she signed the statement and for approximately three hours thereafter before she was taken to the Justice of the Peace. Part of this time was used to comply with her requests for spectacles and clothing. In considering the reasonableness of the delay, the significant hours of detention are those occuring before the confession and not those thereafter. United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944). We are satisfied that there was not unreasonable delay in bringing this defendant before a Justice of the Peace. On the contrary, we think that the police officers in this case observed the legal proprieties, as well as the civilities, most commendably.

There was no violation of Rule 5 or Sec. 1911 and, accordingly, the statement should not have been ruled inadmissible in evidence on that ground, as the defendant urges.

### III.

The defendant contends that there were prejudicial errors in the jury charge.

The court charged on the statutory crime of manslaughter, reading 11 *Del. C.* Sec. 467[4] verbatim. The charge then contained the following:

"If you find beyond a reasonable doubt that the defendant, Ann Webster, *unlawfully pointed* a firearm towards the decedent, Arthur Webster, and *death results* from the unlawful act, and if you do not find that the act was committed under circumstances amounting to murder in the second degree or voluntary manslaughter as I have defined those crimes to you, you should find the defendant guilty of involuntary manslaughter." (Emphasis supplied.)

The defendant attacks this portion of the charge in two respects:

First, it is argued that it was prejudicial error for the court to use the words "unlawfully pointed" in lieu of the statutory words "intentionally pointed."

While we agree that it would have been preferable to utilize the statutory language, we do not agree that the difference in the wording constitutes reversible error. The charge, as supplemented in response to the jury's subsequent inquiry, included three separate readings of Sec. 467. The jury must have understood thereform that an

---

[4] 11 *Del. C.* Sec. 467 provides:
"Sec. 467. Pointing firearm; manslaughter if death ensues
"(a) Whoever, either in jest or otherwise, intentionally points a gun, pistol or other firearm at or towards any other person at any time or place, shall be fined not less than $10 nor more than $100, and the costs of prosecution.
"(b) Should death result to any person by the discharge of such gun, pistol or other firearm while so pointed, the person pointing the same shall be guilty of manslaughter when such killing shall not amount to murder, and shall be punished accordingly."

intentional pointing was the gravamen of the offense; and we do not believe that the jury was mislead, or the defendant otherwise prejudiced, by the court's use of the word "unlawful" instead of "intentional." An intentional pointing of the gun being unlawful under the Statute, it cannot fairly be said that the court erred in its use of the latter word for the former.

Secondly, the defendant argues that the court erred in the above quoted portion of the jury instruction in that if failed to charge on proximate cause, citing *State v. Hupf*, 9 Terry 254, 101 A.2d 355 (1953) and State v. Donovan, 1 Terry 257, 8 A.2d 876 (1939). We find no merit in this contention. The Statute requires that "death result" and the charge required that "death results." The defendant took no exception on this ground at the trial.[5] We are satisfied that, after hearing Sec. 467 read three times by the trial judge, the jury must have understood that direct causation is an essential element of the statutory offense. While a more definitive instruction on proximate cause would have been better, we are convinced that the jury was not so mislead or left so basically uninformed in this connection as to give rise to reversible error.

As to the common law offense of manslaughter, the charge contained the following:

"Also, quite apart from the statute which has been explained to you, the common law endeavors to *safeguard human life* against the *reckless use of firearms* and the negligent handling of a loaded firearm *causing death* to another is manslaughter at common law.

"Therefore, if you find beyond a reasonable doubt that the

---

[5] Superior Court Criminal Rule 30(a) provides in part:
"* * * Except with special permission of the court, no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

defendant *negilgently and recklessly* handled a loaded firearm, which act was the proximate cause of the death of the decedent, Arthur Webster, and if such act was not performed under circumstances amounting to murder in the second degree, or voluntary manslaughter, then your verdict should be guilty of involuntary manslaughter." (Emphasis supplied.)

The defendant contends that there was prejudicial error in this portion of the charge in that the court failed to state that gross negligence is an essential element of the common law offense, citing State v. Hupf, supra. Here again, no exception was taken to the charge on the ground now asserted. We have examined the matter, nevertheless, and have concluded that there is no reversible error in this respect. The court's repetition of "reckless" and "recklessly", in relation to the "safeguard of human life" was sufficient, we think, to indicate to the jury that more than ordinary negligence was needed to support the common law offense. A more complete statement of the "reckless disregard for the lives or safety of others" specified in Hupf would have been preferable; but, in our judgment, the instruction as given was adquate to withstand the charge of prejudicial and reversible error.

Finally, the defendant contends that the trial judge erred in failing to repeat the charge on self-defense when he repeated other portions of the charge at the jury's request. We do not agree. No request was made for such repetition nor was exception taken at the trial. The self-defense instruction was given in the original charge and we do not think that it was error to fail to repeat it under the circumstances.

## IV.

The defendant attempts to raise the following questions on appeal for the first time:

1) The defendant contends that the trial court erred in admitting certain evidence, under the State's plea of surprise, without

an appropriate instruction to the jury regarding the weight to be given such evidence. The record discloses no request for such jury instruction nor any objection to the jury charge on this ground.

2)  The defendant contends that the testimony of a character witness was received notwithstanding a recess conversation about the witness between one of the jurors in this case and a juror sitting in another case. The conversation was reported to the trial judge and was found to be harmless after investigation. The defendant interposed no objection on this ground to the admission of the testimony of the witness.

3)  The defendant submits as reversible error the trial court's refusal to grant the motion for judgment of acquittal made at the close of the States' case and again at the close of all of the evidence. The argument is now made before us that the motion should have been granted because the State failed to prove the causal connection, between the death and the defendant's unlawful acts, requiste to support a conviction of manslaughter. The record fails to disclose that this question was raised at the trial, the motion for acquittal having been addressed soley to the murder charge.

4)  The defendant contends that there was insufficient evidence of causal connection to support a jury instruction that the defendant could be found guilty of manslaughter under 11 *Del. C.* Sec. 467. The record discloses no exception to the jury charge on this ground.

5)  The defendant contends that reversible error occurred when, notwithstanding the fact that an objection was sustained and the court admonished against repetition, the Attorney General repeatedly asked questions about the defendant's moral character without having evidence reflecting upon her character. The defendant also contends that, after admonition by the court, the Arrorney General repeatedly questioned a police officer for his opinion as to the significance of the difference between the number of spent shells and the number of body wounds discovered. No application was made to the trial judge for mistrial, for appropriate jury instruction, or for other relief; and,

apparently, the trial judge observed no prejudicial impropriety in this connection sufficient to require recification *sua sponte*.

\* \* \*

These questions may not be raised for the first time on appeal. After careful consideration of each contention and of the entire trial record, we have concluded that none of the matters asserted amounts to "plain error" noticeable under Superior Court Criminal Rule 52(b).[6] Compare Wiggins v. State, Del., 210 A.2d 314 (1965). And we are satisfied that none properly falls within the recognized exceptions to the general rule that an appellate court will not ordinarily consider questions which have not been fairly presented to the court below. Rickards v. State, supra.

## V.

The defendant contends that it was error for the court to bar questioning of a character witness regarding a specific instance of misconduct by the decedent. If error under the circumstances, we think that this does not rise above harmless error prejudicing no substantial right of the defendant. Superior Court Criminal Rule 52(a).[7]

\* \* \*

Accordingly, we find no ground requiring reversal of the judgemnt below and it is affirmed.

-----

[6] Superior Court Criminal Rule 52(b) provides:
"(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

[7] Superior Court Criminal Rule 52(a) provides:
"(a) Harmless Error. An error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."