William J. WARREN, Defendant
below, Appellant,

v.

STATE of Delaware, Plaintiff
below, Appellee.

Supreme Court of Delaware.

Submitted Dec. 12, 1977.

Decided March 2, 1978.

Stanley C. Lowicki, Wilmington, for defendant-appellant.

Charles K. Meuse, Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

DUFFY, Justice:

This is an appeal from a Superior Court order which affirmed a decision of the Court of Common Pleas denying a motion to suppress evidence and finding defendant guilty of operating a motor vehicle while under the influence of intoxicating liquors, in violation of 21 *Del.C.* § 4177(a).[1]

I

The facts are these:

After dark, a State police officer saw defendant driving his car without head-

---

1. 21 *Del.C.* § 4177(a) provides:

"Whoever drives, operates or has in actual physical control a vehicle while under the influence of intoxicating liquor or of any drug or any combination of drugs and intoxicating liquor shall be fined for the first offense, not less than $200 nor more than $1,000 or imprisoned not less than 60 days nor more than 6 months or both. For each subsequent like offense occurring within 5 years from the former offense, he shall be fined not less than $500 nor more than $2,000 and imprisoned not less than 60 days nor more than 18 months. A suspended sentence shall not be granted those convicted for a second offense under this section. Any person who drives, operates or has in actual physical control a vehicle while such person's blood has reached a blood alcohol concentration of one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty under this section. This provision shall not preclude a conviction based on other admissible evidence."

lights; the car was swerving from one side of the road to the other, almost striking, on three or four occasions, a concrete abutment on the side of the road. While pursuing defendant's car, the officer turned on the red roof lights and turn signals of the police car but defendant's car did not stop. After six or seven minutes of pursuit, the officer finally caught defendant's attention and was able to "pull him over." The officer asked defendant for his operator's license and car registration; he also asked him if he had been drinking. Defendant responded that he had had "a couple of beers." After observing that defendant's eyes were watery and considering his erratic driving behavior, the officer concluded that defendant was under the influence of intoxicating liquor and arrested him. The officer then took defendant to the police station where he was given various coordination tests, all of which he failed. Defendant refused to take an Omicron Intoxilizer test, insisting instead that a blood test be administered; the police declined to give that test. Defendant was then held at the station for eight or nine hours before being taken before a Justice of the Peace on the drunken driving charge.

Briefly, defendant contends that the Court of Common Pleas improperly dismissed his motions to suppress and for judgment of acquittal, that the Court improperly admitted evidence of his refusal to take the Omicron test, that the State failed to comply with discovery rules, and that the conviction was against the weight of the evidence.

## II

First as to the Omicron test:

■ Defendant contends that admission of his refusal to take the test as evidence against him was error because he was charged with "operating" a vehicle while under the influence and the implied consent

statute, 21 *Del.C.* § 2749,[2] allows admission of such refusal only when the charge is "driving" while under the influence.

The argument is without merit. While Delaware case law indicates that there is a distinction between the terms "drive" and "operate" for certain purposes of the motor vehicle laws, see *McDuell v. State*, Del. Supr., 231 A.2d 265 (1967) and *State v. Purcell*, Del.Super. 336 A.2d 223 (1975), it has been specifically held that "driving" is encompassed within the term "operating." 231 *A.2d* at 267. And, clearly, defendant was arrested for his conduct while *driving* his car. Accordingly, the Trial Court did not err in admitting the refusal evidence.

## III

■ As to discovery, we are not persuaded that the State violated its obligation by failing to supply an inventory list of items seized by the police at the time of arrest. The materiality of this item to preparation of the defense appears to be inconsequential and, in any event, if it should have been disclosed, the State's failure does not constitute reversible error. See Court of Common Pleas Criminal Rule 16(b) and (g).

## IV

■ Defendant also alleges various constitutional improprieties, none of which is a basis for reversal. Thus, despite defendant's argument to the contrary, his erratic driving certainly provided probable cause for an arrest. Nor were the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), wrongfully omitted since they are not required to be given in motor vehicle cases. *State v. Bliss*, Del.Supr., 238 A.2d 848 (1968). Defendant's contention that he was denied counsel is also without merit since he was given an opportunity to use

---

2. 21 *Del.C.* § 2749 provides:

"Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person while driving a motor vehicle in this State while under the influence

of intoxicating liquor, the court may admit evidence of the refusal of such person to submit to a chemical test of his breath, blood or urine under the provisions of this subchapter."

the telephone to call an attorney, and he waived the assistance of counsel with respect to the coordination tests which he had insisted be administered. And defendant's argument that the State denied him an opportunity to obtain exculpatory evidence by refusing to administer a blood test is equally pointless; that argument goes beyond the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and ignores the fact that defendant was offered an opportunity to exculpate himself by taking the Omicron test. Delaware law does not require a police officer to permit a person arrested for driving under the influence to take a blood test. On the contrary, 21 *Del.C.* § 2741 provides that the "police officer shall designate which of the tests [i. e., breath, blood or urine] shall be administered."

### V

We now turn to the most troublesome issue presented by the appeal. Defendant contends that after he was arrested he was held for eight or nine hours at the police station before being taken before the nearest available Justice of the Peace. He argues that the detention was entirely arbitrary, that it was made under a general police practice which is followed in drunken driving arrests, that it was contrary to his express requests and that it was in violation of his rights under law.

The governing standard of the arresting officer's duty is found in Superior Court Criminal Rule 5(a), which reads in pertinent part as follows:

"(a) Initial appearance. An officer making an arrest . . . without a warrant or any other authorized peace officer shall take the arrested person without unreasonable delay before the

nearest available Justice of the Peace of the county in which the offense is alleged to have been committed . . . ."

See also 11 *Del.C.* § 1909 [3] and Justice of the Peace Criminal Rule 2(a) which has the same provisions as Superior Court Rule 5(a).

Rule 5 implements the statute and reflects a State policy to provide a speedy preliminary hearing. See the discussion in *State v. Wahl*, Del.Supr., 263 A.2d 297, 301 (1970). The first step in providing that right after arrest is, of course, the "initial appearance" before the "nearest available" Justice of the Peace. *Rule 5(a)*. If the Superior Court determines that there was unreasonable delay in taking an arrested person before a judicial officer, and that the detention was unlawful, then, under settled Delaware law, evidence obtained during such period is inadmissible at trial. *Webster v. State*, Del.Supr., 213 A.2d 298, 301 (1965); *Vorhauer v. State*, Del.Supr., 212 A.2d 886, 892 (1965).

Rule 5(a) is applicable to a charge of driving a motor vehicle while under the influence of intoxicating liquor. *State v. Wahl*, supra.

It is our understanding, based upon the comments of the Deputy Attorney General at oral argument and a statement which he submitted of the State police procedures relating to "pre-presentment detention of intoxicated defendants," that the police uniformly hold one who is charged with driving under the influence for about eight hours before taking him to a Justice of the Peace.[4] Any such arbitrary or uniform detention is unwarranted and unlawful.

It appears that some erroneous conclusions may have been drawn from refer-

---

**3.** 11 *Del.C.* § 1909 reads:

"If not otherwise released, every person arrested shall be brought before a magistrate without unreasonable delay, and in any event he shall, if possible, be so brought within 24 hours of arrest, Sundays and holidays excluded, unless a resident judge of the county where he is detained or of the county where the crime was committed for good cause

shown orders that he be held for a further period of not exceeding 48 hours."

**4.** The Police Statement provides in part as follows:

"If the prisoner is physically incapacitated, e.g. drunk, or if from other circumstances an immediate hearing is impossible, the officer may delay until the incapacity disappears—but no longer.

ence to the 24-hour period in § 1909 and in the discussion thereof in the cases. Cf. *Webster v. State*, supra; *Vorhauer v. State*, supra; and *State v. Klinehoffer*, Del.Super., 173 A.2d 478 (1961). We now take the occasion to emphasize that the command of the statute, the Rules and the cases upon all law enforcement officers, in all cases, is that "every person arrested shall be brought before a magistrate without unreasonable delay." 11 *Del.C.* § 1909. The reference to a 24-hour period is to an exception, not a norm, and it is not an outer limit within which a detention period is presumptively permissible. In *Webster*, this Court noted the critical question of a "reasonable" detention and specified the procedure to be followed in settling such an issue. Thus,

> ". . . Clearly, a delay may be 'unreasonable', and in violation of the Rule and the Statute, though less than 24 hours in duration. But no clear-cut standards of reasonableness may be prescribed. Each case must be considered by the trial judge on its own facts; and the number of hours of detention prior to appearance before a Justice of the Peace is to be considered by the trial judge, together with all of the other circumstances of the case, in determining whether the delay was unreasonable, and in violation of Rule 5 and § 1911 [now, § 1909], so as to bar admission of a confession or statement obtained during such delay.
>
> We emphasize that, unlike the issue of voluntariness which is based upon constitutional grounds, the reasonableness of a delay is a question of evidence to be determined by the trial judge alone; it does not become a jury question."

213 *A.2d* at 301.

We recognize that the application of Rule 5(a) rights to drunken driving and similar "influence" cases presents a somewhat unusual problem for both the police and the Courts. There are conflicting considerations which make the situation unlike that in which a detention period is attacked as unreasonable on the ground that it was for prosecution purposes—to secure a statement from a defendant, for example. But,

here, although the duty of the officer is the same, viz, to present the arrested person without unreasonable delay before a Justice of the Peace, he also has a duty to protect such person from prejudice which might result from a "drunken" appearance before judicial and court personnel. We recognize that the present police practice is an attempt to accommodate these conflicting values, but we do not approve an arbitrary period to govern all driving under the influence cases for Rule 5(a) purposes. Each arrest must be considered on its own facts. *Webster v. State*, supra.

 We hold, therefore, that in processing a driving while under the influence charge, a police officer must operate under a rule of reason, deciding under the circumstances of each case whether the arrested person would be prejudiced by a prompt appearance before a Justice of the Peace and, if so, what *quantum* of delay is reasonably required to eliminate or minimize such prejudice. In making a decision to delay presentation, the police officer should consider the person's general coordination, his ability to communicate, the state of his speech, his physical appearance and, most important, his ability to understand what is occurring and to act in his own interest. Good police practice also requires, in our judgment, that any decision by a police officer to delay presentation of an arrested person before a Justice of the Peace to avoid prejudice, should be made final only after it has been approved by the officer's superior at the time. Any such delay, resulting in continued custody, may last only until defendant's incapacity ends, but no longer. In each case of delay, a rule of reason should also be applied by the police to the possibility of release of defendant to the custody of a relative or friend under a warrant to appear before the Justice of the Peace, in lieu of a holding in police custody. Whether or not the delay was unreasonable or otherwise violated Rule 5(a) is, of course, a determination which is ultimately made by the Court. *Webster v. State*, supra.

\* \* \* \* \* \*

 Upon the record presented in this appeal, we are unable to determine whether defendant was detained only for as long as

was necessary to avoid prejudice to him. Therefore, we remand for a hearing in the Court of Common Pleas on the issue of the reasonableness of the delay, tested by Rule 5 and the criteria stated herein, and a determination of any legal prejudice to defendant if the delay is found to have been unreasonable. Jurisdiction is reserved. After decision by the Court of Common Pleas, the Superior Court in the exercise of its appellate function, may make such rulings as it deems appropriate.