**STATE of Delaware, Plaintiff,**

v.

**Terry L. WRIGHTSON, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Aug. 1, 1978.
Decided Aug. 15, 1978.

Robert B. Anderson, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

Alfred J. Lindh, Wilmington, for defendant.

LONGOBARDI, Judge.

In this action, the Defendant has moved to suppress a quantity of marijuana which was seized by the police from his automobile.

The parties have stipulated to the following facts. On May 2, 1978 at about 6:50 p. m., police officers stopped the Defendant who was driving south on Jackson Street near its intersection with Second Street in Wilmington. The police officers took the Defendant in custody under the provisions of our two hour detention statute. 11 *Del.C.* 1902. They did not arrest him. During the two hour detention period, the Defendant consented in writing to a police search of his automobile. The search which followed immediately thereafter produced a quantity of marijuana, the subject matter of this motion to suppress. Defendant was not represented by counsel at the time he gave the consent to search his automobile. In addition, there were no facts constituting probable cause to stop and detain the Defendant under 11 *Del.C.* 1902, arrest him or search his automobile. Prior to the discovery of the marijuana, there were no facts constituting a reasonable ground to suspect that the Defendant was committing, had committed or was about to commit a crime. There was, therefore, no basis to detain him under 11 *Del.C.* 1902 or to arrest him. The Defendant concedes his consent to search was voluntary. His sole objection to its use as evidence is that his consent was given during a period of illegal detention and, therefore, being "fruits" of an unlawful action by the State should be suppressed. *Rickards v. State*, Del.Supr., 6 Terry 573, 77 A.2d 199 (1950); *Webster v. State*, Del.Supr., 213 A.2d 298 (1965); *Vorhauer v. State*, Del.Supr., 212 A.2d 886 (1965); *Warren v. State*, Del.Supr., 385 A.2d 137 (1978); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The issue in this case points up the necessity to review the reasons for the exclusionary rule. Our continued use of the doctrine in the day to day events of different trials under a myriad of circumstances, testing and stretching or otherwise constricting its application, can very well blunt our reserve to constantly reach to attain the goals it was designed to achieve. In the very difficult and sometimes frustrating effort to ferret out crime, there had to be some means to guarantee the rights of the Fourth Amendment against the overzealous, sometimes unbridled or unlawful ac-

tions of police officers. It is a remedial tool which consequentially may also deter and at the same time insures Judicial integrity by closing the courthouse door to evidence that was unlawfully seized.

■ To argue that the "taint" of evidence unlawfully seized is cleansed by the voluntary actions of the Defendant is much too broad a generalization to be accepted as the principle of law to be applied. Its unmindful application would frustrate the very purpose of the exclusionary rule and might even encourage unlawful arrests or detentions. What is apparent is that conceding some illegality in the arrest or detention each case must be tested against a standard designed to determine whether the voluntary consent to search, or a direct or indirect inculpatory statement or confession, was given under such circumstances that the challenged evidence had become so attenuated as to dissipate the taint of the illegal arrest, *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939), or granting the primary illegality, the evidence was obtained by ". . . exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

■ Apart from the question of "voluntariness", the policies of the exclusionary rule relative to the Fourth Amendment guarantees must be satisfied. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

■ In this case, the detention of the Defendant was unlawful. There was no reasonable basis to suspect he had, was or was about to commit a crime. There was no probable cause for an arrest if the State were to argue the "detention" was a misnomer for what was actually an arrest. The Defendant's consent to search his automobile occurred within a very short time after he was taken into custody. There is no evidence of an intervening circumstance such as the appearance of an attorney which would prove that the evidence seized was anything but the exploitation of the illegal detention. Weighing all the circumstances, the Court concludes that the seized evidence is tainted by the illegal detention and, therefore, must be suppressed.

In reaching this decision, the Court is not unmindful of the case of *Schaffer v. State*, Del.Supr., 184 A.2d 689 (1962). In *Schaffer*, *supra*, the evidence which was seized after being voluntarily surrendered had been observed by police officers during a lawful detention. The subsequent unlawful detention during which the Defendant "voluntarily" surrendered the evidence might easily be construed as the basis for considering that evidence tainted and, therefore, should have been suppressed. Since that evidence was seen by the police on the defendant during a lawful detention, they came by their information independently of any violation of the defendant's Fourth Amendment rights. To put it another way, it was come at ". . . by means sufficiently distinguishable to be purged . . ." of the primary taint. *Wong Sun v. United States, supra*, 371 U.S. at 417, 83 S.Ct. at 417.

IT IS SO ORDERED.