**James HICKS, Defendant–
Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff–
Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 13, 1993.
Decided: Oct. 1, 1993.

Paraphernalia. We face an important question as to how far the police may legitimately execute a search under 11 *Del.C.* § 1903 and the United States Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We believe that both Section 1903 and *Terry* provide the police with an absolute right to search a person for weapons if that person has been legitimately detained *and* the officer has a reasonable belief that the detainee is presently armed and dangerous. In this case, however, we are forced to conclude that the search, after it was determined that the defendant did not possess a weapon, exceeded the permissible scope of an investigatory detention. Under the "fruits of the poisonous tree" doctrine, we must exclude all evidence obtained directly or indirectly from this illegal search. Accordingly, we reverse the judgments below.

I.

The facts are essentially undisputed. A uniformed officer of the Delaware State Police was patrolling Reed Street in Frankford, Delaware, when he observed a white Chevrolet Chevette stopped in the middle of Reed Street, ostensibly in violation of 21 *Del.C.* § 4178(a).[1] Not knowing whether the car was disabled or simply impeding traffic, the officer stopped to determine the problem. As the officer drove his car toward the Chevette, it moved forward and turned right into a private residential driveway. The officer followed the Chevette as it turned and stopped in the private drive. He left his car and approached the driver. The officer asked the driver, Monica Collins ("Collins"), for her driver's license and registration. As he was speaking to Collins, the officer suddenly noticed Hicks approaching from his left.

As Hicks came closer, the officer heard him doing a lot of "talking" and he observed that Hicks had both of his hands concealed inside his pockets. The officer also noticed that a group of six to eleven

William M. Chasanov, Brown, Shiels & Chasanov, Georgetown, for appellant.

John R. Garey, Deputy Atty. Gen., Dept. of Justice, Georgetown, for appellee.

Before VEASEY, C.J., and HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court en Banc).

MOORE, Justice.

James E. Hicks ("Hicks") appeals his convictions in the Superior Court of Trafficking in Cocaine and Possession of Drug

1. This section provides in part: "Upon any highway outside of a business or residential district, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway...."

people had assembled around the car as he spoke to Collins. Alone in a high-crime area, best known for the large number of narcotics arrests that occur there, the officer began to feel uneasy about the growth of the crowd and Hicks' apparent interest in his investigation. The officer turned and asked Hicks what he was doing there. Rather than simply telling the officer that Collins was his girlfriend, Hicks asked the officer to explain what he was doing. This exchange caused the officer to become increasingly concerned about his exposure to risk of harm from Hicks and contributed to his fear that Hicks was keeping his hands in his pockets in order to conceal a weapon.

Hoping to complete his investigation without further interruption or interference, the officer asked Hicks to leave the area while he talked to Collins. Hicks mumbled an unintelligible response, but nevertheless remained in the immediate area of the car. Feeling menaced by Hicks' continued movement and refusal to move on, the officer decided to detain and identify him. Once the officer detained Hicks, he made a record of his contact for subsequent police use and radioed in a computer check to determine if Hicks had any outstanding warrants. As he waited for the results of his computer check, the officer decided to do a pat-down search of Hicks for any weapons. The officer then began a cursory search of Hicks' outer clothing. He discovered what felt like a large bulge in the left side of Hicks' jacket pocket up around his chest area. Concerned that this bulge was a concealed weapon, the officer reached underneath the coat to remove the object. He discovered it to be a medium-sized green pouch.

The officer's first thought upon recovering the pouch was that it was large enough to conceal a handgun. Anticipating the officer's concern, Hicks spontaneously remarked that the pouch contained his grandmother's money. The officer, however, did not believe Hicks. He opened the pouch,

looked inside and saw a "wallet full of money and ... a sandwich bag or something." Knowing that drugs are frequently packaged in sandwich or cellophane bags, the officer seized the pouch, and decided to further examine its contents to see if any drugs were concealed inside. From this point it is undisputed that the officer had the pouch entirely in his possession and control.

Before the officer continued his search of the pouch, however, he decided to remove Hicks from the area in order to avoid any potential threat from the growing crowd. The officer placed Hicks in his police car and drove him to a hardware store approximately one-half mile away. At that location, the officer reexamined the pouch, which had remained in his sole possession and control, and found $1,739.30 in cash and a clear plastic bag containing what was later verified to be 6.48 grams of crack cocaine.[2] Hicks was arrested and he later confessed to possessing cocaine for purposes of sale.

## II.

On appeal, Hicks contends that the Superior Court erred in failing to suppress the evidence obtained during the pat-down search because, in the clear absence of any reasonable grounds to suspect that Hicks was committing or was about to commit a crime, the detention and search violated 11 *Del.C.* § 1902 and the United States Constitution. We review the trial court's refusal to grant a motion to suppress, after an evidentiary hearing, under an abuse of discretion standard. *Gregory v. State*, Del. Supr., 616 A.2d 1198, 1200 (1992); *Alston v. State*, Del.Supr., 554 A.2d 304, 308 (1989), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2455, 104 L.Ed.2d 1009 (1989). Thus, Hicks' convictions can only be reversed if the Court finds the decision below to be clearly erroneous. *Potts v. State*, Del. Supr., 458 A.2d 1165, 1168 (1983).

---

**2.** Hicks argues throughout his brief that the arresting officer gave inconsistent and self-serving testimony in the second suppression hearing. However, where, as here, the determination of facts turns on questions of credibility and the acceptance or rejection of live testimony by the trial judge, his findings will be approved upon review. *Levitt v. Bouvier*, Del. Supr., 287 A.2d 671, 673 (1972).

Hicks first argues that the trial court should have suppressed the evidence because the police did not have reasonable suspicion upon which to justify a stop or search of his person. As a general rule, the police may forcibly stop and detain a person *if* the police have a *reasonable suspicion* of criminal activity on the part of that person. *See Terry v. Ohio*, 392 U.S. at 22, 88 S.Ct. at 1880; *U.S. v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983); *Coleman v. State*, Del. Supr., 562 A.2d 1171, 1174 (1989), *cert. denied*, 493 U.S. 1027, 110 S.Ct. 736, 107 L.Ed.2d 754 (1990); *Byrd v. State*, Del. Supr., 458 A.2d 23, 25 (1983); *see also* 11 *Del.C.* § 1902. "Reasonable suspicion has been defined as the officer's ability to point to *specific and articulable facts* which, taken together with all rational inferences from those facts, reasonably warrant the intrusion." *Coleman*, 562 A.2d at 1174 (emphasis added) (*quoting Terry v. Ohio, supra* ).

In Delaware, these principles have been codified in 11 *Del.C.* § 1902. *Coleman*, 562 A.2d at 1174, n. 3. This section provides:

(a) A peace officer may stop any person abroad, or in a public place, who he has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and where he is going.

(b) Any person so questioned who fails to identify himself or explain his actions to the satisfaction of the officer may be detained and further questioned and investigated.

(c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime.

11 *Del.C.* § 1902. The purpose of this section was to legalize the questioning and detention of persons without probable cause where the *express criteria* of this section were met. *State v. Deputy*, Del. Supr., 433 A.2d 1040, 1042 (1981) (emphasis added); *State v. Bowden*, Del.Supr., 273 A.2d 481, 484 (1971). Where, however, there is no reasonable basis to suspect the detainee had committed, was committing, or was about to commit a crime, any detention of that defendant is unlawful. *State v. Wrightson*, Del.Super., 391 A.2d 227, 229 (1978).

■ In this case, the trial judge indicated that the real question was whether it was reasonable to conduct a pat-down search of a person whose behavior made the police officer apprehensive for his own safety. Although Hicks argues that the trial judge never reached the dispositive question whether there were reasonable grounds to detain the defendant under 11 *Del.C.* § 1902, we believe there was sufficient evidence for the court to conclude that Hicks' initial detention was justified in the interests of the officer's safety.

We recognize that a police officer making a reasonable investigatory stop may protect himself or herself from attack by a hostile suspect, *Terry*, 392 U.S. at 23, 88 S.Ct. at 1881, but that the officer's authority under such circumstances is clearly limited by constitutional principles. One such limitation is that the person searched must have been first detained pursuant to the requirements and consistent with the scope of 11 *Del.C.* §§ 1902–1903.[3] Another limitation is that the officer must possess a reasonable belief that the detainee is presently armed and dangerous. *State v. Morrow*, Del.Supr., 603 A.2d 835, 837 (1992); *Nash v. State*, Del.Supr., 295 A.2d 715, 718 (1972). In the absence of either such conditions, a police officer may not conduct a

---

**3.** 11 *Del.C.* § 1903 provides:

A peace officer may search for a dangerous weapon any person whom he has stopped or detained to question as provided in § 1902 of this title, whenever he has reasonable ground to believe that he is in danger if the person possesses a dangerous weapon. If the officer finds a weapon, he may take and keep it until the completion of the questioning, when he shall either return it or arrest the person. The arrest may be for the illegal possession of the weapon.

pat-down search without violating the defendant's statutory and constitutional rights against unreasonable search and seizure.

We are satisfied that the officer did not act on the basis of generalized suspicion alone. The key difference here was Hicks' threatening behavior. Hicks did not tell the investigating officer that Collins was his girlfriend or otherwise explain his reasons for ignoring the officer's request to move along. Even though Hicks was not the target of the officer's initial inquiry, his furtive movements, evasive answers and refusal to move on created a menacing atmosphere that frustrated the officer's ability to complete his investigation. Under these circumstances, we are satisfied that the officer articulated sufficient facts to support a reasonable suspicion that Hicks posed a potential threat to the former's safety. Thus, the initial detention of Hicks satisfied the twin requirements of 11 *Del.C.* §§ 1902–1903, and *Terry v. Ohio, supra.* That conclusion, however, does not end the matter.

### III.

■ The essential question remaining is whether the investigating officer exceeded the proper scope of Hicks' detention—a far more troublesome issue. Hicks contends that, not only was the officer prohibited from searching the pouch after seizing it and learning that there was no weapon inside, but that the officer further violated Hicks' rights when he unnecessarily removed Hicks from the scene of the initial detention. The State responds that since the officer was confronted with a growing crowd in a high crime area, the officer acted reasonably in removing Hicks to a more secure location to ensure that the pouch held no weapons.

Our analysis of this issue is guided by the well-settled rule that an investigatory detention must be reasonably related in *scope* to the circumstances which first justified the interference. *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879 (emphasis added). The

reasonable scope of an investigatory detention is determined by balancing the government's need to search against the invasion of the person who is the object of the search. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880; *Morrow,* 603 A.2d at 837. Hence, a search which is minimally intrusive and reasonably related in scope to the circumstances which justified the interference passes constitutional muster. *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879; *Coleman,* 562 A.2d at 1176.

### A.

The rationale for a *Terry* search is solely predicated on a determination whether a suspect is armed. Here, the State faces the difficult proposition of defending the continued search even though the officer had seized the pouch, had it in his sole possession and under his control, and by then had good reason to believe that Hicks was unarmed. At the second suppression hearing the officer testified that after he removed the green pouch from the defendant's coat, he opened it enough to look inside and see that the pouch contained neatly folded U.S. currency and a piece of plastic or cellophane. Although the officer also testified that he could not see the entire contents of the bag when he looked inside it, he never indicated that his handling of the pouch led him to believe that it contained a weapon. Instead, acting out of a generalized concern for the size of the crowd, the officer seized the pouch and removed the defendant to a different location where he could further examine the contents of the pouch. With the pouch in his possession and under his control, the officer no longer had any properly articulable basis to conclude that defendant's former possession of the pouch endangered the officer's present safety.

The foregoing circumstances thus confront us with a question regarding the permissible scope of a search initiated under *Terry v. Ohio, supra.*[4] Recently, the Supreme Court of the United States revisited

---

**4.** Of course, any search undertaken pursuant to 11 *Del C.* § 1903 must comport with the constitutional standards set forth in *Terry* and its progeny.

the *Terry* doctrine in an analogous case which determined whether the Fourth Amendment permits the seizure of contraband detected through a police officer's sense of touch. *See Minnesota v. Dickerson,* —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

In *Dickerson,* the police stopped a defendant who had just left a building known to be used for the sale of cocaine. *Id.,* at ——, 113 S.Ct. at 2132–33. Concerned for his safety, the officer conducted a pat-down search of the suspect but discovered no weapons. *Id.* The officer did, however, feel a small lump in the defendant's jacket pocket. After examining the lump with his fingers, the officer concluded it was cocaine and he removed it from the defendant's coat. *Id.* The defendant was subsequently arrested and convicted for possession of a controlled substance.

The analysis in *Dickerson* is particularly instructive here. *Dickerson* observes that the purpose of a *Terry* search is "not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Id.* at ——, 113 S.Ct. at 2136. The Court added that since such searches must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby ... [i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Id.* (citations omitted). With those principles in mind, the Supreme Court turned to the merits and concluded that since the incriminating character of the object was not immediately apparent to the officer during the course of his pat-down search, and was only determined to be contraband after the officer conducted a further search, the search was not authorized by *Terry* or any other exception to the warrant requirement. *Id.* at ——, 113 S.Ct. at 2139.

The outcome can be no different here. Once the pouch was removed, seized and inspected by the arresting officer, no reasonable basis remained to believe that Hicks was presently armed and dangerous. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Morrow,* 603 A.2d at 837; *Nash,* 295 A.2d at 718. As a consequence, the officer's subsequent decision to reexamine the contents of Hicks' pouch violates the constitutional mandate of both state and federal law. *See Dickerson,* —— U.S. at ——, 113 S.Ct. at 2136 (holding that protective searches must be "strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby"); *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883 (explaining that in "determining whether the officer acted reasonably under such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience"); *Robertson v. State,* Del.Supr., 596 A.2d 1345, 1352 (1991) (recognizing the "narrowly drawn authority" to permit a reasonable search for weapons).

We therefore conclude that, although Hicks' menacing conduct justified his initial detention, the officer's decision to reexamine the contents of the pouch without articulating any reasonable basis to believe it contained a weapon exceeded the permissible scope of the safety search authorized under 11 *Del.C.* § 1903 and *Terry v. Ohio, supra.*

### B.

■ Separate and distinct concerns attach to the officer's decision to remove Hicks from the scene of the initial detention. Although in isolated cases the police may move a suspect without exceeding the bounds of a legitimate investigative detention,[5] the Delaware rule remains that an investigatory detention must be minimally intrusive and reasonably related in scope to the circumstances which justify the interference. *Coleman,* 562 A.2d at 1176.

---

5. *Buckingham v. State,* Del.Supr., 482 A.2d 327, 334 (1984) (police may move suspect for show-up when they know a crime has been committed); *U.S. v. Baron,* 860 F.2d 911 (9th Cir.1988) (police may move suspect when reasonably necessary for security reasons).

Of necessity, this rule allows for the constitutional principle that limited intrusions may, on balance, be justified by special law enforcement interests so long as the police have an articulable basis for suspecting criminal activity. *Michigan v. Summers*, 452 U.S. 692, 699, 101 S.Ct. 2587, 2592, 69 L.Ed.2d 340 (1981). In this case, however, we find that any balancing of the government's need to search against the type of invasion of the person, which this search entails, militates against finding that the search was justified.

First, the scope of the initial investigation was significantly limited. The catalytic event underlying the officer's actions in this case was a preemptive search of a third-party witness to the routine investigation of a traffic stop. Whatever legitimate law enforcement interests attach to such an investigation pale in comparison to the substantial intrusion into the constitutional rights of the defendant who was ultimately detained and searched, and the purportedly dangerous pouch seized and transported a significant distance away from the place where he was first stopped.

Second, the presence of the crowd alone (as distinguished from Hicks' menacing conduct) raised no *substantial* security interests. The officer reported no threatening words, acts or other intimidation from the small crowd that collected at the scene. Nor did he discover any illegal drugs prior to moving the defendant. Instead, he unilaterally decided to move Hicks solely on the basis that he thought too many people were watching his actions. Such generalized suspicions fall short of the statutory and constitutional dictates that an officer articulate reasonable suspicion in lieu of acting on an amorphous impulse.

Indisputably, the officer's transportation of the defendant to the hardware store amounted to a substantial disruption in the status quo that was wholly unrelated to the purposes of the initial detention—ensuring the officer's safety during a routine traffic stop. Since an investigative detention must last no longer than is reasonably necessary to effectuate the purpose of the stop, *U.S. v. Mondello*, 927 F.2d 1463 (9th

Cir.1991), the removal of Hicks from the scene of the initial investigation transformed the detention into a seizure requiring probable cause. *See U.S. v. Hooper*, 935 F.2d 484 (2nd Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 663, 116 L.Ed.2d 754 (1991).

## IV.

In the final analysis, we find that the trial judge's failure to consider whether the police exceeded the scope of Hicks' investigatory detention was clearly erroneous and constitutes fundamental error. In the context of an investigative detention, an officer may not continue a search of the defendant once the officer learns that the defendant is not armed. *Dickerson*, —— U.S. at ——, 113 S.Ct. at 2136. Equally important, however, is the fact that the police must resolve their suspicions in the most expedient manner by diligently pursuing the means of investigation in the least intrusive manner possible. *U.S. v. Williams*, 784 F.Supp. 1553 (M.D.Fla.1991).

In view of these guiding principles, we are forced to conclude that the officer exceeded the scope of his authority to search Hicks once he seized the pouch and determined that Hicks was unarmed. The officer's persistence in relocating Hicks and reexamining his pouch was an illegal search and seizure, the result of which is that all evidence so obtained, either directly or indirectly, must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Cooley*, Del.Supr., 457 A.2d 352 (1983); *State v. Prouse*, Del.Supr., 382 A.2d 1359 (1978), *judgment aff'd*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). We therefore are constrained to reverse the judgments of the Superior Court.