IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                    :
                                      :       I.D. No. 1502003222
        v.                            :       Kent County
                                      :
MARSHALL L. RIVERS, III,              :
                                      :
        Defendant.                    :


Submitted: April 4, 2016
Decided: April 21, 2016


**ORDER**

Upon Defendant's Motion to Suppress.
*Granted.*


Zachary A. George, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Andre M. Beauregard, Esquire of Brown Shiels & Beauregard, Dover, Delaware; attorney for the Defendant.


WITHAM, R.J.

Defendant Marshall L. Rivers III ("Rivers") moves this Court to suppress evidence seized as the result of a traffic stop of a vehicle in which Rivers was a passenger. Rivers claims the stop was illegal because the vehicle in which he was riding did not fail to come to a stop, and that the stop was a pretext to conduct further investigation of the occupants of the vehicle for more serious crimes. Rivers further claims that if the stop was legal, it was extended beyond the time necessary to complete the purpose of the stop, and that such an extension must be supported by facts sufficient to justify the additional intrusion. For the following reasons, Rivers' motion to suppress evidence is GRANTED.

## FACTS AND PROCEDURAL HISTORY

On February 5, 2015, Patrolman First Class Joshua Boesenberg ("Pfc. Boesenberg") was patrolling in his capacity as a member of the City of Dover Police Department's Drug, Vice and Organized Crime Unit. He was accompanied by Rick Porter ("Officer Porter"), a probation and parole officer. As a team, Pfc. Boesenberg and Officer Porter patrol high crime and drug areas and ensure compliance of probationers within the City of Dover. At approximately 10 p.m., Pfc. Boesenberg witnessed a green Chevrolet pickup truck fail to stop for a stop sign on Whatcoat Drive and thereafter conducted a traffic stop. Pfc. Boesenberg testified that after initiating the stop, the vehicle continued to roll slowly while the driver and passenger appeared to be engaged in conversation. The vehicle eventually stopped on the shoulder of the road.

After the vehicle stopped, Pfc. Boesenberg approached the vehicle from behind

2

on the driver's side. As Pfc. Boesenberg approached the vehicle with a flashlight, he saw the passenger, Rivers, placing his hands near his waist area. Pfc. Boesenberg testified that he saw Rivers place his hand in his left front outside jacket pocket, and that he observed what appeared to be heroin bundled in blue wax paper inside the pocket. Rivers was removed from the vehicle. Pfc. Boesenberg described Rivers' demeanor as nervous. Rivers was staring straight ahead, would not make eye contact, was fidgeting, and was making movements on his left side in the pocket area. Once Rivers was removed from the vehicle, the contents of the left front outside jacket pocket were no longer visible.

Pfc. Boesenberg checked the left pocket of Rivers' jacket, but found no heroin. A pat down search revealed packages that felt like heroin in Rivers' jacket liner. Pfc. Boesenberg testified that further investigation revealed a hole in the left front outside jacket pocket through which the heroin may have been pushed in order to hide the heroin in the jacket liner. Surprisingly, the jacket was not seized as evidence. At an April 4, 2016 hearing to suppress evidence obtained as a result of the traffic stop, counsel for Rivers produced a jacket that had been given to him by Rivers.[1] The

---

[1] At sidebar the Court asked the State if a request for discovery of evidence had been served on the Defendant under Super. Ct. Crim. R. 16. The State responded that they do so in every case. Counsel for Rivers stated that he was not required to disclose physical evidence. Section (b) governs disclosure of evidence by the Defendant. Rule 16(b)(1)(A) states:

> Documents and Tangible Objects. If the defendant requests disclosure under subdivision (a)(1)(C), (D) or (E) of this rule, upon compliance with such request by the state, the defendant, on request of the state, shall permit the state to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the

jacket was identified by Rivers as the jacket he was wearing on the night of the traffic stop. The jacket produced at the hearing did not have a hole in the left front outside pocket. However, the jacket did have a hole in the inside left breast pocket, a pocket that Pfc. Boesenberg testified that he could not see when approaching the vehicle.

On June 23, 2015, Rivers filed this motion to suppress evidence obtained as the result of the traffic stop, and of the subsequent detention, search, seizure, and arrest of Rivers. On April 4, 2016, this Court conducted a hearing on the motion to suppress.

## STANDARD OF REVIEW

The Delaware Supreme Court has held that "any evidence recovered or derived from an illegal search and seizure" must be excluded from evidence.[2] Once a motion to suppress has been filed, the State bears the burden of proving by a preponderance of the evidence "that the challenged police conduct comported with the rights guaranteed [to the defendant] by the United States Constitution, the Delaware Constitution and Delaware statutory law."[3] Probable cause exists "when the officer

---

defendant and which the defendant intends to introduce as evidence in chief at the trial.

The jacket is a tangible object and therefore subject to disclosure. If the jacket was not available when the State's Rule 16 request was made, Rule 16(c) imposes a continuing duty to disclose. The failure of counsel for Rivers to disclose possession of the jacket is a violation of Rule 16 and would possibly prevent admission of the jacket into evidence at trial. To the extent the jacket was allowed into evidence at the hearing, the Court considered the fact that the jacket remained in the possession of the Defendant or Defendant's counsel until it was produced at the hearing.

[2] *Jones v. State*, 745 A.2d 856, 872-73 (Del. 1999).

[3] *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001).

possesses information which would warrant a reasonable man in believing that a crime has been committed."[4] The finding of probable cause does not require proof beyond a reasonable doubt, or even that the defendant's guilt is more likely than not. Probable cause only requires that the arresting officers "present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime."[5]

## DISCUSSION

It is well established that "law enforcement officers may arrest an individual only if the seizure is supported by probable cause."[6] Furthermore, "law enforcement officers may stop or detain an individual for investigatory purposes, but only if the officer has reasonable articulable suspicion to believe the individual to be detained is committing, has committed, or is about to commit a crime."[7] However, the search of an individual who has not been arrested is limited in scope and may only be performed for officer safety.[8] "[W]hile officer safety is both legitimate and weighty,

---

[4] *State v. Betts*, 2015 WL 2066602, at *1 (Del. Super. Apr. 1, 2015).

[5] *Id.* at *5.

[6] *Woody v. State*, 765 A.2d 1257, 1262 (Del. 2001) (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)).

[7] *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

[8] *See Holden v. State*, 23 A.3d 843, 849-50 (Del. 2011) ("[T]he constitution does not condone routine pat downs without any reasonable suspicion that the officer's personal safety requires it."); *Purnell v. State*, 832 A.2d 714, 721 (Del. 2003) ("[I]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed."); *Caldwell v. State*, 780 A.2d 1037, 1050-51 (Del. 2001) ("After an officer effectuates a lawful investigative stop supported by reasonable suspicion, the officer has an absolute right to conduct a limited search of the suspect for dangerous weapons if the officer has a reasonable belief

it cannot in all circumstances justify a search or seizure. Otherwise nearly any invasion of a person's privacy could be justified by arguing that the police needed to protect themselves from harm."[9]

The question before the Court is whether the pat down search conducted by Pfc. Boesenberg violated Rivers' constitutionally guaranteed rights protecting him from an unreasonable search and seizure. This question presents two related issues. The first issue is whether Pfc. Boesenberg possessed probable cause to believe Rivers was in possession of heroin. Probable cause to believe Rivers was in possession of heroin would bolster the State's argument on the second issue. The second issue is whether Pfc. Boesenberg possessed reasonable and articulable facts to justify a pat down search of Rivers. It is the State's burden to present a cogent argument in support of each issue.

The State argues Pfc. Boesenberg possessed probable cause to believe a crime had been committed because Rivers made furtive movements while talking with the driver of the vehicle as the vehicle came to a stop, because Boesenberg observed clear plastic bags containing blue wax paper inside Rivers' left front jacket pocket, and because Rivers exhibited nervous behavior and continued furtive movement prior to being removed from the vehicle. Pfc. Boesenberg approached a Chevrolet pickup truck at 10 p.m. in the evening. The police report refers to the pickup truck as a C15

---

that the detainee is presently armed and dangerous.") (internal quotation marks omitted); *Hicks v. State*, 631 A.2d 6, 9 (Del. 1993) ("The rationale for a *Terry* search is solely predicated on a determination whether a suspect is armed.").

[9] *Jones v. State*, 745 A.2d 856, 872 n.78 (Del. 1999).

pickup, which would be a full size Chevrolet pickup truck. Based strictly on the facts as presented, the Court is not convinced that an officer would be able to identify bundled blue wax paper packets in a clear plastic bag in a passenger's jacket pocket when approaching a full size pickup truck from behind on the driver's side in poor lighting conditions. Although the Court finds it implausible that an officer could identify bundled packets of heroin under these conditions, it does not find it impossible. However, in this instance, more facts were needed to carry the argument.

Furthermore, the items Pfc. Boesenberg suspected to be in the jacket pocket where no longer visible when Rivers exited the vehicle, and in fact were not in the jacket pocket when Rivers was searched. Pfc. Boesenberg testified that there was a hole in the jacket packet through which Rivers pushed the packets of heroin into his jacket liner, but the jacket was not seized as evidence. There is no doubt that Pfc. Boesenberg suspected the content of the jacket pocket was heroin, and he most certainly possessed a reasonable suspicion that Rivers had committed a crime, but, based on the foregoing, there was not enough evidence to support probable cause. Probable cause would have allowed Pfc. Boesenberg to arrest Rivers and perform a search incident to arrest. However, Rivers was not arrested, and the reasonable suspicion possessed by Pfc. Boesenberg limited the scope of the stop to that of an investigatory detention.

Once Rivers was removed from the vehicle, Pfc. Boesenberg performed a pat down search. The Supreme Court of Delaware has stated that the nature of the crime and whether the area in which the detention occurs is a high crime area are factors to

be considered when determining the constitutionality of a *Terry* frisk.[10]  The Court has also stated that the mere incantation of "officer safety" does not provide the suspicion necessary for a frisk. [11]  An officer must "possess a reasonable belief that the detainee is presently armed and dangerous."[12]  On direct examination, Pfc. Boesenberg stated that Rivers was known to possess weapons, but no testimony was offered as to how Pfc. Boesenberg came into this knowledge.  On cross examination, Pfc. Boesenberg was asked if he had a suspicion of any weapons, and he replied "I always do."  When asked why he performed a pat down of Rivers, Pfc. Boesenberg replied that heroin dealers commonly use weapons.

Pfc. Boesenberg testified that Rivers was known to possess weapons and that heroin dealers commonly use weapons, but this testimony was cursory as well as conclusionary and unsupported by facts.  On cross examination, Pfc. Boesenberg testified that he always suspects weapons.  Pfc. Boesenberg suspected Rivers may have had drugs in his jacket pocket, but there was no concrete information other than a view through the rear window of a pickup truck in poor lighting condition to support that suspicion.  Thus, absent expanded testimony that Rivers was a known drug dealer, the nature of the crime exception is tenuous at best.  There was no bulge to indicate a weapon. There were no sudden movements to lead Pfc. Boesenberg to believe Rivers was armed.  The Court perceives this testimony as the "mere

---

[10] *See Holden*, 23 A.3d at 850.

[11] *Id.*

[12] *Hicks*, 631 A.2d at 9.

incantation of officer safety" that *Holden* held does not provide the suspicion necessary for a frisk. In summary, there was a lack of cogent testimony showing Pfc. Boesenberg possessed reasonable and articulable suspicion that Rivers might be armed at that moment and may have posed an immediate danger in that situation.

The Court notes that Rivers was on Level III probation at the time of the stop. Probation and Parole procedures in place at the time of the stop appear to give Officer Porter the authority to perform a search of Rivers' person if Officer Porter possessed sufficient reason to believe Rivers possessed contraband.[13] Pfc. Boesenberg testified that he did not learn Rivers was on probation until some point after the stop was completed. Because there was no claim that the search was performed based on Probation and Parole guidelines, the Court will not perform an analysis regarding the legality of such a search. The Court merely points to another tool that may be at law enforcement's disposal.

## CONCLUSION

A pat down search performed in public by a policeman while the citizen stands helpless "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly."[14] Courts are charged with the responsibility of monitoring the "substantial interference with liberty and personal security by police officers whose judgment is necessarily

---

[13] Probation and Parole Procedure 7.19 section VI(E)(1) allows an officer to search an offender or his living quarters when "[t]he Officer has knowledge of sufficient reason to believe the offender possesses contraband."

[14] *Terry*, 392 U.S. at 17.

colored by their primary involvement in 'the often competitive enterprise of ferreting out crime.'"[15] "A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement."[16] To overcome this supposition of invalidity, the State must present facts sufficient for the Court to find an exception to the warrant requirement. The State failed to meet this burden based on the specific facts of this case. Therefore, Rivers' motion to suppress evidence is **GRANTED**.

     IT IS SO ORDERED.


            /s/ William L. Witham, Jr.
            Resident Judge


WLW/dmh
oc:    Prothonotary
xc:    Zachary A. George, Esquire
        Andre M. Beauregard, Esquire

---

[15] *Id.* (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)).

[16] *State v. Brinkley*, 2013 WL 1225869, at *7 (Del. Super. Feb. 19, 2013).