# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | )    ID No. 1801000980 |
| v. | )    In and For Kent County |
| | ) |
| BREMONTE R. PALMER, | ) |
| Defendant. | ) |

## ORDER

Submitted: August 1, 2018
Decided: August 13, 2018

*Upon Defendant's Motion to suppress*
**DENIED**

On this the 13th day of August, 2018, having considered Defendant Bremonte Palmer's (hereinafter "Defendant") motion to suppress and the State's response, as well as evidence and argument offered at a hearing held August 1, 2018, the Court finds that the motion to suppress must be **DENIED**.

Defendant seeks suppression of drug contraband seized from his person pursuant to a police stop of a vehicle in which Defendant was a passenger on January 2, 2018. The following facts are those as found by the Court by a preponderance of the evidence.

## I.    Factual Background

At approximately 3:30 p.m. on the day in question, Troopers Solda and Holl of the Delaware State Police were conducting surveillance in Woodside, Delaware, when

they observed a red Dodge Charger (hereinafter the "Vehicle") stop on the shoulder of the road with its hazard lights on. The driver of the Vehicle, Donald Bratcher, exited on foot and approached a house nearby. Bratcher tested the doorknob and, finding the door to be locked, returned to the Vehicle and drove away. The Vehicle still had its hazard lights on as it pulled onto the roadway and did not utilize its turn signal.

The Vehicle continued along the road for a short time before Solda and Holl initiated a traffic stop. The Vehicle pulled over to the shoulder and Solda and Holl approached on foot. The officers discovered Bratcher driving the vehicle and also observed Defendant in the front passenger seat, and another passenger in the back seat, Savannah Walker.

The troopers began to collect information and documentation from the Vehicle occupants, but Bratcher was unable to produce registration or insurance documents for the Vehicle, and Walker was unable to produce identification of any kind. Trooper Solda also observed that Bratcher was visibly nervous and had a long round object in his pants pocket that Trooper Solda considered to be of a shape and size consistent with either a bundle of heroin or a firearm magazine. Trooper Holl observed that Defendant appeared very nervous and that he had a wallet on his lap that contained a large quantity of United States currency.

The troopers returned to their police vehicle and began to perform records, documents, and background checks on the Vehicle and its occupants. The troopers also discussed their previous experience with Bratcher, and recollected that he was a suspect in a recently reported shooting. Further investigative efforts were rendered difficult due to a malfunction with the onboard computer, which prevented the verification of insurance information for the Vehicle and confirmation of Walker's identity and whether she had any criminal history or active capiases.

The officers again approached the Vehicle on foot and requested that Bratcher step out of the Vehicle. Bratcher was patted down and drug contraband was discovered

2

in his pants pocket, at which time he was arrested and placed inside the police vehicle. Meanwhile, Trooper Holl continued to question Defendant, who began to exhibit aggressive behavior, including the use of profanity and "sizing up" Trooper Holl, *i.e.*, looking at him and his weapon in a way that made Trooper Holl believe that Defendant was preparing to assault him. Trooper Holl asked Defendant to exit the Vehicle and handcuffed him. Upon handcuffing him, Trooper Holl patted down Defendant and detected a large round object in his groin area of almost exactly the same shape and size as the log of heroin earlier found in Bratcher's pocket. A search later revealed this object to be drug contraband. The Vehicle's occupants were then transported to Troop Three.

## II.    Legal Standard

In a suppression hearing, the Court sits as the finder of fact and evaluates the credibility of the witnesses.[1] The party with whom the burden rests must persuade the Court by a preponderance of the evidence.[2] Because this was a warrantless search and seizure, the State bears the burden.[3]

A police officer who observes a traffic violation has probable cause to stop the vehicle and its driver.[4] The scope and duration of a traffic stop must be reasonably related to its initial justification,[5] namely, addressing the traffic infraction.[6] Such

---

[1] *State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Nov. 28, 2016).

[2] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. June 22, 2015).

[3] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

[4] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)).

[5] *Holden*, 23 A.3d at 847 (Del. 2011); *Caldwell v. State,* 780 A.2d 1037, 1046 (Del. 2001); *State v. Chandler*, 132 A.3d 133, 140 (Del. Super. 2015), *as corrected* (April 14, 2015). *See Rodriguez v. United States*, 135 S. Ct. 1609, 1621 (2015); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

[6] *Rodriguez*, 135 S. Ct. at 1615 (citing *Delaware v. Prouse*, 440 U.S. 648, 658–660 (1979)); *Caldwell v. State,* 780 A.2d 1037, 1047 (Del. 2001) (describing the tasks to be performed as "issu[ing] a citation or warning and . . . run[ning] routine computer checks").

inquiries may include checking the occupants' identification, determining whether there are outstanding warrants against the occupants, and inspecting the automobile's registration and proof of insurance.[7] The stop should last "no longer than is necessary."[8] An officer performing a lawful traffic stop may not deviate into investigation of other offenses, unless the officer observes independent facts sufficient to justify such additional intrusion.[9] A "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."[10]

Despite the above, a traffic stop may be lawfully prolonged when an officer has reasonable suspicion that would warrant further investigation.[11] Reasonable suspicion is determined based on the "totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[12]

Law enforcement may order a vehicle occupant to exit the vehicle, because such an intrusion on a defendant's privacy interests is *de minimis*.[13] Further, pursuant to *Terry v. Ohio*, law enforcement may also conduct a limited search for weapons when "the facts available to the officer at the moment of the seizure or the search 'warrant a

---

[7] *Id.*

[8] *Rodriguez*, 135 S. Ct. at 1614 ("Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns . . . . Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.") (citations omitted); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion) (holding that the Fourth Amendment's "protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a warrantless search: the search must be limited in scope to that which is justified by the particular purposes served by the exception.").

[9] *Caldwell*, 780 A.2d at 1047; *State v. Dewitt*, 2017 WL 2209888, at *2 (Del. Super. May 18, 2017).

[10] *Illinois v. Caballes*, 125 S. Ct. 834, 837 (1983).

[11] 11 *Del. C.* § 1902; *Rodriguez*, 135 S. Ct. at 1615.

[12] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999) (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). *See Terry v. Ohio*, 392 U.S. 1, 27 (1968).

[13] *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977).

man of reasonable caution in the belief' that the action taken was appropriate."[14] A defendant may be handcuffed during this search if justified and reasonable under the totality of the circumstances.[15] In making the above determinations "due weight must be given . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience."[16] "A police officer may seize non-threatening contraband detected during a pat-down search if the identity of that contraband is immediately apparent from plain sight or plain touch."[17]

## III.  Discussion

Here, Defendant has not challenged the validity of the initial traffic stop.[18] Further, the Court considers the testimony of the troopers to be credible that they had a reasonable basis to believe that a traffic violation had occurred, namely a failure to signal in violation of 21 *Del. C.* § 4155(d).

The Court further finds that the stop was not unlawfully prolonged. Upon review of the video of the stop, the Court finds that the stop, which lasted only thirteen minutes leading up to Defendant's arrest, was conducted expeditiously and without delay. Considering the computer difficulties, the troopers addressed the necessary tasks of records and documents checks as expeditiously as possible, and the Court finds no lack of reasonable diligence on their part.[19] While shortly thereafter the prosecution of the

---

[14] 392 U.S., at 21–22 (1968). *See State v. Henderson*, 892 A.2d 1061, 1064-65 (Del. 2006).

[15] *State v. Parks*, 95 A.3d 42, 51 (Del. Super. 2014).

[16] *Terry*, 392 U.S., at 27.

[17] *Mosley v. State*, 748 A.2d 407 (Table) 2000 WL 275574, at *1 (Del. 2000).

[18] The Court notes that the Defendant's motion to suppress analyzes the stop as being initially justified as a welfare check pursuant to the community caretaker doctrine, and does not address the issue of whether a valid traffic stop occurred. The Court, upon hearing the evidence, considers the stop justified as a traffic stop.

[19] *Rodriguez*, 135 S. Ct. at 1616 (2015) ("If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's]

traffic stop was abandoned and a drug investigation was begun, this was justified by the discovery of drug contraband on Bratcher's person—particularly when viewed in the light of the other observations of a possible attempted burglary, nervousness of the occupants, and possession of a large quantity of currency. These observations provided reasonable suspicion warranting the further detention and investigation of the Vehicle and its occupants.

The troopers were also entitled to remove Defendant from the Vehicle. Trooper Holl had observed sufficient facts justifying a reasonable belief that the action of handcuffing and patting down Defendant was appropriate: they were in a high crime area, the occupants of the vehicle outnumbered the officers present, and Defendant was extremely nervous, was carrying a large quantity of money, was in a vehicle associated with a possible attempted burglary, was travelling in a vehicle with an individual suspected of a shooting and discovered to be in possession of drug contraband, used harsh and profane language against Trooper Holl, and "sized up" Trooper Holl, looking at him and his weapon in a way that made him apprehensive of an assault.[20] From the above observations, Trooper Holl drew the inference that Defendant posed a threat to him and his partner and that reasonable caution required him to be handcuffed and subjected to a pat down search. The Court, giving due weight to Trooper Holl's experience and inferences, finds that the pat down was justified by reasonable suspicion

---

mission.'").

[20] The Court finds the decision of the Delaware Supreme Court in *Hunter v. State*, 783 A.2d 558 (Del. 2001), to be instructive. In that case, the Court found similar factors justifying a pat down search, including that (1) defendant was a companion of a person associated with drug contraband and possible drug distribution; and (2) the officers were outnumbered. Presence in a high crime area has also been held to support reasonable suspicion to perform a pat down search. *Woody v. State*, 765 A.2d 1257, 1265 (Del. 2001). Threatening behavior and responses to an officer's questioning have also been deemed supportive of reasonable suspicion for a *Terry* stop and search. *Hicks v. State*, 631 A.2d 6, 9 (Del. 1993).

6

and substantiated by the specific and articulable facts listed above, and was appropriate given the circumstances.

At the time that Trooper Holl felt the item concealed in Defendant's groin area, Trooper Holl observed that it was almost exactly the same size and shape as the log of heroin discovered in Bratcher's pocket. Therefore, because the reasonable probability that the item was contraband was immediately apparent to Trooper Holl, its later seizure did not violate Defendant's rights. Upon discovery of the drug contraband on Mr. Palmer's person, his arrest was supported by probable cause and therefore lawful.[21]

**WHEREFORE**, Mr. Palmer's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/wjs
_Sent via email & U.S. Mail_
oc:   Prothonotary
cc:   Sean A. Motoyoshi, Esquire
      Andre M. Beauregard, Esquire

---

[21] _Thompson v. State_, 539 A.2d 1052, 1055 (Del. 1988)