# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. No. 1809014012 |
| | ) | |
| | ) | |
| MALIK STEVENS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Submitted: January 8, 2020
Decided: January 17, 2020

*Upon Consideration of State's Motion for Reargument*,
**DENIED.**

**AND NOW TO WIT**, this 17th day of January, 2020, upon consideration of the State's Motion for Reargument and the record in this case, it appears to the Court that:

1.    After the Court issued its Memorandum Opinion ("Opinion") and granted suppression in favor of Defendant,[1] the State filed a timely Motion for Reargument on December 21, 2019 seeking review under Superior Court Criminal Rule 41 or clarification, generally.[2]    Defendant filed a response via email on

---

[1] *State v. Stevens*, No. 1809014012, 2019 WL 6840040, at *2 (Del. Super. Ct. Dec. 12, 2019) (granting Defendant's Motion to Suppress on the basis of insufficient evidence).

[2] *See generally* State's Motion for Reargument on Defendant's Motion to Suppress, *State of*

December 30, 2019.  On January 8, 2020, this Court heard oral argument on the State's Motion for Reargument.[3]

2.    The Court will not reiterate the underlying facts in this case, as they have previously described by this Court in its Memorandum Opinion granting Defendant's Motion to Suppress.[4]

### Standard of Review

3.    Delaware Superior Court Criminal Rule 57(d) states: "In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule . . . ."[5]  "Superior Court Civil Rule 59[ ] is made applicable to criminal cases by Superior Court Criminal Rule 57(d)."[6]

4.    Delaware Superior Court Civil Rule 59(e) permits the Court to reconsider "its findings of fact, conclusions of law, or judgment . . . ."[7]  "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[8]  To

---

*Delaware v. Malik S. Stevens,* Crim. ID No. 1809014012, D.I. 35 (Del. Super. Ct. Dec. 18, 2019).

[3] *See* Hearing for State's Motion to Reargue the Motion to Suppress, *State of Delaware v. Malik S. Stevens,* Crim. ID No. 1809014012, D.I. 40 (Del. Super. Ct. Jan. 8, 2020).

[4] *See generally Stevens*, 2019 WL 6840040.

[5] DEL. SUPER. CT. CRIM. R. 57(d).

[6] *Guardarrama v. State*, 911 A.2d 802, 2006 WL 2950494, at *3 (Del. Oct. 17, 2006) (TABLE) (citing DEL. SUPER. CT. CRIM. R. 57(d)).

[7] *Hessler Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969).  *See* DEL. SUPER. CT. CIV. R. 59(e).

[8] *Kostyshyn v. Comm'rs of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Ct. Apr. 27, 2007) (citing *Fatovic v. Chrysler Corp.*, No. CIV.A. 00C08299 HLA, 2003 WL 21481012, at *5 (Del. Super. Ct. Feb. 28, 2003); *Arnold v. Soc'y for Sav. Bancorp*, No. CIV.A. 12883, 1995 WL 408769 (Del. Ch. June 30, 1995)).

prevail on a motion for reargument, the movant must demonstrate that "the Court has overlooked a controlling precedent or legal principle[ ], or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[9]  Further, "[a] motion for reargument is not a device for raising new arguments,"[10] nor is it "intended to rehash the arguments already decided by the court."[11]  Such tactics frustrate the interests of judicial efficiency and the orderly process of reaching finality on the issues.[12]  In a motion for reargument, the moving party has the burden of demonstrating "newly discovered evidence, a change of law, or manifest injustice."[13]  Here, the State argues manifest injustice.

*Discussion*

5.      Senior Probation Officer DuPont ("PO DuPont") is a probation officer and a member of the Special Operations Division, specifically the Safe Streets Task Force Unit ("Safe Streets").[14]  He is not a trained police officer.  He did not testify

---

[9] *Bd. of Managers of Del. Criminal Justice Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Ct. Jan. 17, 2003), *aff'd in part*, 840 A.2d 1232 (Del. 2003) (citing *Cummings v. Jimmy's Grille, Inc.*, No. 99C-07-031-WTQ, 2000 WL 1211167, at *2 (Del. Super. Ct. Aug. 9, 2000) (internal citations omitted)).

[10] *Id.*

[11] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Ct. Jan. 31, 2006).

[12] *See Plummer v. Sherman*, 2004 WL 63414, at *2 (Del. Super. Ct. Jan. 14, 2004).

[13] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. Ct. 1995).

[14] Safe Streets is described as a joint task force between police and probation officers.  *See* Motion to Suppress Hearing Transcript - Morning, (Aug. 23, 2019) at 27:23-28:3 [hereinafter "Hearing Tr. I"] (Safe Streets allows police officers to "work hand in hand with probation and parole.  Some of [the] responsibilities include monitoring and entering probationers to ensure compliance with their conditions, and [to] also conduct proactive investigations into criminal activity within [their] jurisdiction.").

at the suppression hearing in opposition of Defendant's Motion to Suppress.[15] Instead, Detective Andrew Rosaio ("Rosaio"), also a member of Safe Streets, employed as a police officer with the New Castle County Police Department ("NCCPD"), testified as to PO DuPont's alleged observations that occurred on the morning of September 25, 2018 regarding the incidents relevant to this case.[16]

6.      The Court granted suppression because the record is replete with gaps between the initial traffic stop and police arrival, creating questions as to whether the *probation* officer's actions were lawful, and leaving the Court to speculate as to whether the state action was justified at the traffic stop's inception. Specifically, PO DuPont is not a police officer, did not testify at the suppression hearing, and the Court was unable to consider "the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer . . . ."[17] and was unable to "defer to the experience and training of law enforcement officers."[18] For this reason, the Court could not assess the facts available to that officer—PO DuPont—when he blocked in, approached, questioned and seized Stevens. As a result, the Court determined the State was unable to meet its burden and the evidence insufficient.

---

[15] *See* Suppression Hearing:  Reserved Decision, *State of Delaware v. Malik S. Stevens,* Crim. ID No. 1809014012, D.I. 30 (Del. Super. Ct. Aug. 23, 2019).
[16] State's Search Warrant Application and Affidavit at ¶ 2.
[17] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).
[18] *State v. Dillard*, 2018 WL 1382394, at *6 (Del. Super. Ct. Mar. 16, 2018), *reargument denied,* 2018 WL 2264414 (Del. Super. Ct. May 17, 2018), and *aff'd,* 207 A.3d 136 (Del. 2019) (quoting *Woody v. State*, 765 A. 2d 1257, 1262 (Del. 2001) (citing *Jones*, 745 A.2d at 861)).

4

7.     Troubled by the duration and scope of the "detention" conducted by Detective Rosaio, the Court raised various concerns, although it did not deem it necessary to analyze under *Caldwell*.   The Court supplements its Opinion in consideration of *Caldwell v. State*.[19]

8.     Under *Caldwell*, "[t]he duration and execution of a traffic stop is necessarily limited by the initial purpose of the stop"[20] and "any investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion."[21]   A traffic stop becomes a "second

---

[19] *See generally* 780 A.2d 1037 (Del. 2001) (holding that a traffic stop must be justified from the outset by a reasonable suspicion of criminal activity and that the investigation must be reasonably related in scope to the stop's initial justification to comport with the Fourth Amendment).

[20] *Id.* at 1047 (citing *Florida v. Royer*, 460 U.S. 491, 498, 500 (1983) ("[R]easonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop . . . [A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."); *Hicks v. State*, 631 A.2d 6, 10 (Del. 1993) ("[A] search which is minimally intrusive and reasonably related in scope to the circumstances which justified the interference passes constitutional muster.") (emphasis added and citations omitted); 11 *Del. C.* § 1902 (authorizing brief investigative stops where an officer has a reasonable ground to believe that the suspect has committed a crime)).

[21] *Id.* (citing *Ferris v. State*, 355 Md. 356, 735 (1999) ("[T]he officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention."); *Whitehead v. State*, 698 A.2d 1115, 1118 (1997) ("[T]he purpose of the traffic stop is to issue a citation or warning. Once that purpose has been satisfied, the continued detention of a vehicle and its occupant(s) constitutes a second stop, and must be independently justified by reasonable suspicion.") (internal citation omitted); *People v. Redinger*, 906 P.2d 81, 85–86 (Colo. 1995) ("When, as here, the purpose for which the investigatory stop was instituted has been accomplished and no other reasonable suspicion exists to support further investigation, there is no justification for continued detention and interrogation of citizens."); *Com. v. Torres*, 674 N.E.2d 638, 642 (Mass. 1997) ("It is well settled that a police inquiry in a routine traffic stop

5

detention," when the police "prolong" detention "to investigate other possible crimes."[22] Delaware law provides that the duration and scope of the traffic stop must last only as long as reasonably necessary to effectuate the purpose of the stop, at which point the legitimate investigative purpose of the traffic stop is completed.[23] Here, the duration and scope of the traffic stop violated *Caldwell* in several respects.

9. The first glimpse of a *Caldwell* issue arises when the probation officer, through some presumed authority under Operation Safe Streets, decided to stop Stevens and conduct what Detective Rosaio characterized as a "traffic stop," after Stevens is alleged to have entered into his girlfriend's neighborhood without using a proper turn signal. It is unclear on what basis PO DuPont made the decision, but assuming he was authorized to do so, the record sets out the following:

10. The probation officer followed Stevens until Stevens backed into the driveway of his girlfriend's residence, where PO DuPont blocked him in. He then approached Stevens to question him. He compelled Stevens to produce documentation. If authorized to act as he did, PO DuPont did not perform the functions associated with issuing a citation. He instead called for Detective Rosaio, also of Safe Streets. Neither issued a citation.

---

must end on the production of a valid license and registration unless the police have grounds for inferring that 'either the operator or his passengers were involved in the commission of a crime . . . or engaged in other suspicious conduct.'")).

[22] *State v. Chandler*, 132 A.3d 133, 140 (Del. Super. Ct. 2015), *as corrected* (Apr. 14, 2015) (citing *Caldwell*, 780 A.2d at 1047).

[23] *Dillard*, 2018 WL 1382394, at *6 (citing *Caldwell*, 780 A.2d at 1046-50).

11. It is undisputed by the State that PO DuPont seized Stevens. The duration of the stop is unknown and it is unclear for how long PO DuPont held Stevens, waiting for Rosaio to arrive. What is clear, as set out in the Opinion, is that the Court did not find credible the portions of Rosaio's testimony asserting that only twenty seconds passed between PO DuPont's seizure of Stevens and Rosaio's arrival.

12. While there are gaps regarding the timing and scope of the probation officer's actions, if the State had called PO DuPont to justify this initial detention, the Court finds that his actions of blocking Stevens's vehicle and calling in a detective are outside the mission of carrying out the functions of a routine traffic violation. The duration of the stop was unlawfully extended when, instead of issuing a citation, PO DuPont decided to call a Safe Streets detective, not for a traffic violation but to conduct a separate investigation. The Court considers this to be the first strike under *Caldwell.*

13. It is clear from the video evidence that Rosaio was not called to issue a ticket, where within seconds of arrival, the officer was investigating more.[24] Assuming his acts were based on what perhaps PO DuPont may have seen (raw flakes of marijuana) or smelled (the strong odor of raw marijuana within five feet of

---

[24] *See* Joint Exhibit 1; *see also* Defendant's Exhibit 1; *see also* Defendant's Exhibit 2.

approaching Stevens) as testified to by Rosaio,[25] then the best that can be said is that Rosaio was called to investigate drug activity related to the vehicle. Instead, as outlined in the Opinion, Rosaio was focused on obtaining evidence beyond the vehicle and was solely interested in what was in "the house" relevant to this case.

14. Even if calling Rosaio to the scene was justified, the duration and scope of Rosaio's search and seizure of Stevens went beyond that which was necessary to investigate any raw flakes of marijuana or any straw with white powdery substance, allegedly located in the vehicle.[26] The video evidence demonstrates that even after the first pat-down search and vehicle search, there was no evidence.[27] At that point, Stevens should have been given a citation or released. Neither happened. Instead, Rosaio extended the scope and duration of the detention when he conducted a second pat-down search of Stevens' person, equally as intrusive as the first one. There was no justification for so doing. For reasons already expressed in the Court's Opinion, there was no evidence that Rosaio's conduct was based on officer safety or the ordinary questions related to the traffic ticket.[28] Under *Caldwell*, this is strike two.

---

[25] *See* Hearing Tr. I at 34:6-8.

[26] *See id.* at 30:7-13, 43:13-44:4; *see also* Joint Exhibit 1.

[27] *See* Joint Exhibit 1; *see also* Defendant's Exhibit 1; *see also* Defendant's Exhibit 2.

[28] The Court highlights that even if justified, Rosaio's "first search should have addressed any safety concern[,]" and that any subsequent searches, "exceeded the scope of both the traffic violation and the drug investigation where Stevens had nothing on his person nor in his vehicle to warrant further intrusion." *State v. Stevens*, No. 1809014012, 2019 WL 6840040, at *8 (Del. Super. Ct. Dec. 12, 2019).

15.     Following two pat-downs and two extensive searches of Stevens' vehicle—that yielded no evidence of illegal activity or threats to officer safety—Rosaio maintained that Stevens was not under arrest and placed him in handcuffs into the back of a police vehicle.   Although Rosaio called this a mere detention, it is an arrest without justification, wherein he conducts a third search of Stevens, this time asking him to remove his shoes.[29]  This search also yielded nothing.  Strike three.  Still not satisfied, he riddled him Stevens with questions and claims to have obtained consent to additional searches, which this Court already opined was invalid. Assuming the Court overlooks the first two *Caldwell* strikes, it cannot do so for strike three.   There was no evidence that Rosaio's conduct was based on any specified justification to search or seize Stevens, or to place him in the back of a police vehicle and hold him there until they obtained the consent they claim to have been given.

16.     The Court considers the acts of both DuPont and Rosaio throughout the stop, finding such conduct to be wholly unrelated to issuing a ticket for the initially alleged traffic violation.  This Court conducted a fact-specific analysis of this stop, finding the presence of at least three *Caldwell* violations, potentially more.  At different levels, Safe Streets officers prolonged the duration and scope of the traffic stop without reasonable articulable suspicion to justify the seizure.  The pretext of a

---

[29] *See* Joint Exhibit 1.

9

traffic violation converted this stop into an unconstitutional detention. Safe Streets went beyond the boundaries of the ordinary tasks associated with a lawful routine traffic stop and violated constitutional protections that should have been afforded Stevens.

### *Conclusion*

17. To supplement, the Court finds the existence of an unjustified measurable extension of the stop in violation of Stevens' constitutional rights. The Court further finds the State fails to meet the heavy burden of manifest injustice to warrant reargument. Where clarification was requested, the Court finds that under *Caldwell,* Defendant's Motion to Suppress stands as GRANTED, and the State's Motion for Reargument is **DENIED.**

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   Thomas A. Pedersen, Esquire, Law Office of Thomas Pedersen
      Zachary Rosen, Deputy Attorney General
      Office of Defense Services
      Investigative Services Office